[Argued April 6, 1893; decided June 19, 1893; affirmed January 8, 1894.]

# AHERN *v.* OREGON TELEPHONE CO.

[S. C. 33 Pac. Rep. 403.]

PLEADING—VARIANCE—CODE, § 98.—In an action against a telephone company for damages for carelessly permitting a wire heavily charged with electricity to hang dangerously low in a public street, it is not a fatal variance to allege that while passing along the street plaintiff came in contact with the wire, which he was unable to see owing to the darkness, and that upon attempting to remove it from his way, he was shocked and burned by electricity, and upon the trial to show that while passing along the street plaintiff slipped, and in groping about for his packages which had fallen, touched the wire and was so injured; this is a variation of the circumstances and particulars, but the real cause of complaint, viz., the negligence of the defendant, appears as much from one set of circumstances as from the other. This shows an immaterial variance, but not a failure of proof.[1]

NEGLIGENCE— ELECTRIC WIRE.—It is negligence to allow a wire which, from its environment, is liable to become charged with electricity, to hang in or over a street or sidewalk at such a height as to obstruct and endanger ordinary travel.

IDEM.—A telephone company which, instead of removing its wire on taking it out of a residence, leaves it hanging upon an electric-light company's pole, is bound to look after it, and is liable for an injury to a traveler who comes in contact with it after it has been removed by employees of the electric-light company and hung upon a telephone pole, where it is accidentally touched by a traveler on a sidewalk while it was charged by contact with an electric-light wire or a street railway company's wire.

NEGLIGENCE— PROXIMATE CAUSE.[2]—Negligence in leaving a telephone wire where it is touched accidentally by a traveler on a sidewalk is a proximate cause of an injury to him from an electric shock, although this was occasioned by accidental contact of the wire with wires of an electric-light company or a street-railway company, at least, where it does not appear that these were out of their proper position.

---

[1] Section 98 of Hill's Code provides that " when the allegation of the cause of action or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance, but a failure of proof."

[2] NOTE.— An exhaustive discussion of proximate and remote cause in cases involving wrongful acts will be found with the case of *Gilson* v. *Delaware & Hudson Canal Co.* 36 Am. St. Rep. 807.—REPORTER.

Multnomah County: E. D. SHATTUCK, Judge.

Action by Eugene Ahern against the Oregon Telephone & Telegraph Company to recover damages for personal injuries received by coming in contact with a telephone wire that had become heavily charged with electricity and was hanging down from a pole on which it had been coiled and hung.  Judgment for plaintiff, and defendant appeals. Affirmed.

*Chas. H. Carey* (*R. & E. B. Williams* on the brief), for Appellant.

Negligence in this case must be proved as a fact, and not presumed from the circumstance that plaintiff was injured:  *Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250; *Coughtry* v. *Willamette Street Ry. Co.* 21 Or. 245; 1 Shearm. & Redf. Neg. § 60; *Parrott* v. *Wells,* 82 U. S. 15 Wall. 537; 21 L. Ed. 211; *Schultz* v. *Pacific Railroad,* 36 Mo. 31; *Baker* v. *Fehr,* 97 Pa. 70; *Gramlich* v. *Wurst,* 86 Pa. 74 (27 Am. Rep. 684); *Bachelder* v. *Heagen,* 18 Me. 32; *Mitchell* v. *Chicago & G. T. R. Co.* 51 Mich. 236 (38 Am. Rep. 566).

When an injury may have come of either one of two causes, either of which may have been the sole proximate cause, it devolves on the plaintiff to prove by a preponderance of evidence that the cause for which the defendant was liable was culpable, and the proximate cause:  16 Am. and Eng. Enc. Law, p. 445; Patterson, Railway Accident Law, 435;  *Searles* v. *Manhattan R. Co.* 101 N. Y. 661; *West Mahanoy Twp.* v. *Watson,* 112 Pa. 578; *Marble* v. *Worcester,* 4 Gray, 397.  In this case the accident must be ascribed to the circumstance that the wire had become charged with electricity, and not alone to the position of the wire at the sidewalk.

Where a plaintiff avers a particular state of facts, he is entitled to a verdict only in virtue of giving evidence tending to prove the state of facts so averred:  *Waldhier* v. *Hannibal & St. J. R. Co.* 71 Mo. 514; *Buffington* v. *Atlantic & P. R. Co.* 64 Mo. 246; *Stout* v. *Coffin,* 28 Cal. 65; *Neu-*

*decker* v. *Kohlberg*, 81 N. Y. 296; *Boardman* v. *Griffin*, 52
Ind. 101; *Woodward* v. *Oregon R. & Nav. Co.* 18 Or. 289;
*Knahtla* v. *Oregon Short Line R. Co.* 21 Or. 136.

The duty imposed does not require the taking of every
possible precaution to avoid injury to individuals, nor
that the company should have employed any particular
means, which, it may appear after the accident, would
have avoided it; it was only required to use such reason-
able precaution to prevent the accident as would have
been adopted by prudent persons prior to the accident.
*Wabash, St. L. & P. R. Co.* v. *Locke*, 112 Ind. 404; *Chicago,
B. & Q. R. Co.* v. *Stumps*, 55 Ill. 367; Pollock, Torts, 36;
*Volkmar* v. *Manhattan R. Co.* 26 Jones & S. 125; *Daniels* v.
*Potter*, 4 Car. & P. 262; *Holden* v. *Liverpool New Gas & C.
Co.* 3 C. B. 1.

No man can be charged with neglect if he used due
care according to the circumstances, although there could
have been even more elaborate and effective precautions
conceived of by some one else: 16 Am. & Eng. Enc. Law,
p. 398, title, Negligence; Ordinary Care.

If a party be guilty of an act of negligence which
would naturally produce an injury to another, but before
such injury actually results a third person does some act
which is the immediate cause of the injury, such third
person is alone responsible therefor, and the original party
is not responsible even though the injury would not have
occurred but for his negligence: Cooley, Torts, 73; *Wash-
ington* v. *Baltimore & O. R. R. Co.* 17 W. Va. 190; *West
Mahanoy Twp.* v. *Watson*, 116 Pa. 349.

An intervening efficient cause, sufficient to break the
causal connection between the original wrong complained
of and the injury, may be either culpable or not culpable,
accidental or intentional, animate or inanimate. The test
is, was the new and independent force, acting in and of
itself in causing the injury and superseding the original
wrong complained of, so as to make it remote in the claim

of causation; although it may have remotely contributed
to the injury as an occasion or condition thereof? 16 Am.
& Eng. Enc. Law, 445; *Lewis* v. *Flint & P. M. R. Co.* 54
Mich. 55 (52 Am. Rep. 790); *Washington* v. *Baltimore & O.
R. Co.* 17 W. Va. 190; *Louisiana Mut. Ins. Co.* v. *Tweed,* 74
U. S. (7 Wall. 44, 19 L. Ed. 65); *Hoag* v. *Lake Shore & M. S.
R. Co.* 85 Pa. 293 (27 Am. Rep. 653); *Pennsylvania Co.* v.
*Whitlock,* 99 Ind. 16 (50 Am. Rep. 71); *Milwaukee & St. P.
R. Co.* v. *Kellogg,* 94 U. S. 475 (24 L. Ed. 259); *Merchants'
Wharfboat Asso.* v. *Wood,* 64 Miss. 662 (60 Am. Rep. 76);
*Tutein* v. *Hurley,* 98 Mass. 211 (93 Am. Dec. 154); 2 Thomp-
son, Negligence, 1084, *et seq.*; 33 Cent. L. J. note, 450.

The proximate cause of the injury must be alleged in
the complaint with particularity, and strictly proved on
the trial: *Woodward* v. *Oregon R. & Nav. Co.* 18 Or. 289;
*Knahtla* v. *Oregon Short Line & U. N. R. Co.* 21 Or. 136.

Since the facts are not disputed, the question whether
the acts of defendant were the remote or the proximate
cause of the injury, is a question for the court, and not for
the jury, and should be determined by this appeal: *West
Mahanoy Twp.* v. *Watson,* 116 Pa. 344; *Hoag* v. *Lake Shore
& M. S. R. Co.* 85 Pa. 293 (27 Am. Rep. 653); *Henry* v. *St.
Louis K. & N. R. Co.* 76 Mo. 288 (43 Am. Rep. 762); *Lewis*
v. *Flint & P. M. R. Co.* 54 Mich. 55 (52 Am. Rep. 790);
*Wabash, St. L. & P. R. Co.* v. *Locke,* 112 Ind. 404; *Baker* v.
*Fehr,* 97 Pa. 70; *Woodward* v. *Oregon R. & Nav. Co.* 18 Or.
289; *Langford* v. *Jones,* 18 Or. 307; *Gibson* v. *Oregon Short
Line & U. N. R. Co.* 23 Or. 493.

ON PETITION FOR REHEARING.

Whatever the rule may be in the cases of bailments, in
other cases of negligence the distinction between slight,
ordinary, and great care should be repudiated, and the
true test should be whether the defendant exercised such
care as ordinarily prudent men, in view of the probabilities
of danger, would have exercised: 16 Am. & Eng. Enc.

Law, 398, 402, 426; Wharton, Negligence, §§ 44, 65, 66; Cooley, Torts, *631, 632; Deering, Negligence, § 11; Bishop, Non-Cont. L. §§ 439, 442; 2 Redfield, Railways, 229, note 5.

Mankind might be capable of taking precautions that would be extraordinary, unnecessary, and impractical, but ordinary caution in the management and control of electricity does not reach so far. Even if the utmost caution is to be required, it is the caution that is practical and not that which is simply conceivable: Hutchinson, Carriers, § 502; *Indianapolis & St. L. R. Co.* v. *Horst*, 93 U. S. 296, 23 L. Ed. 899; *Tuller* v. *Talbot*, 23 Ill. 357 (76 Am. Dec. 695); 2 Redfield, Railways, 239; 2 Wood, Railway Law, 1058, note 1.

The defendant was not engaged in managing or controlling a dangerous current of electricity, and the rule of extreme caution does not measure its responsibility: *Kelly* v. *Manhattan R. Co.* 3 L. R. A. 74 (112 N. Y. 450); *Palmer* v. *Pennsylvania Co.* 2 L. R. A. 252 (111 N. Y. 488); *Morris* v. *New York Cent. & H. R. R. Co.* 106 N. Y. 678; *Lafflin* v. *Buffalo & S. W. R. Co.* 106 N. Y. 136 (26 Am. Dec. 629); *Moreland* v. *Boston & P. R. Corp.* 141 Mass. 31.

*James Gleason*, and *Alfred F. Sears* (*Henry E. McGinn*, and *Nathan D. Simon* on the brief), for Respondent.

The motion for a nonsuit was very properly denied: Code, §§ 246, 247; *Grant* v. *Baker*, 12 Or. 329; *Anderson* v. *North Pacific Lumber Co.* 21 Or. 281. Where a telegraph wire is left swinging across a public highway, at such a height as to obstruct and endanger ordinary travel, such fact unexplained and unaccounted for, raises a presumption of negligence: *Thomas* v. *Western U. Teleg. Co.* 100 Mass. 156; *Dickey* v. *Maine Teleg. Co.* 46 Me. 483; Thompson, Negligence, § 24, 359; *Western U. Teleg. Co.* v. *Eyser*, 2 Colo. 141; *Stephens & C. Transp. Co.* v. *Western U. Teleg. Co.* 8 Ben. 502; *Gray* v. *Boston Gas Light Co.* 114 Mass. 149 (19 Am. Dec. 324).

A telephone company which for several weeks permits its wire to remain suspended across a public highway a few feet from the ground, is liable to a traveler who comes in contact therewith during an electrical storm, and is injured by a discharge of electricity which had been attracted from the atmosphere, since the electricity would have been harmless except for the wire: *Southwestern Teleg. Co. & Teleph. Co.* v. *Robinson,* 16 L. R. A. ·545, (2 U. S. App. 205, 50 Fed. Rep. 810); *United Electric R. Co.* v. *Shelton,* 89 Tenn. 423.

It is the duty of a telephone company using a public highway for its poles and wires to so construct and maintain its line as not to incommode the public use of the highway for the purpose of travel and transportation, whether by ordinary vehicles, or by street railways: *Central Pennsylvania Teleph. & S. Co.* v. *Wilkes-Barre & W. S. R. Co.* 11 Pa. Co. Ct. Rep. 417; *Cincinnati Inclined Plane R. Co.* v. *City & S. Teleg. Asso.* 12 L. R. A. 534, 48 Ohio St. 390.

If the concurrent or successive negligence of two persons combined together results in an injury to a third person, he may recover damages from either: 2 Thompson, Negligence, 1088, *et seq.;* 15 Am. & Eng. Enc. Law, 440.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

This is an action to recover damages for a personal injury alleged to have been caused by the negligence of the defendant in permitting its wire to come in contact with an electric wire, whereby it became heavily charged with electricity, and in allowing such wire to hang down so near the ground at the corner of K and Twenty-first Streets as to endanger the life and limb of those traveling upon such streets. The errors assigned relate to the refusal of the trial court to grant a nonsuit, and to certain instructions given and refused. Upon the first point the conten-

tion is that the evidence does not prove the cause of action alleged, although it may be sufficient to constitute a ground of action, and consequently that the variance is fatal to the plaintiff's recovery. It is no doubt true that the plaintiff must state the facts which constitute his cause of action, and that he cannot state one and prove another. The Code, with all its comprehensive liberality, will not admit, as SHERWOOD, J., said, "a plaintiff to sue for a horse and recover a cow": *Waldhier* v. *Hamilton Railroad*, 71 Mo. 518. Such variance is fatal, for the reason that the cause of action, is unproved in its entire scope. The inquiry, then, is whether the testimony for the plaintiff establishes a cause of action different from the one alleged. That there is some variation between the evidence and the complaint, may be conceded, but it consists only in matter of detail, or as to how the injury occurred; there is no absolute departure in the proof from the original theory of the case. The point to which the variance relates is this: The allegation, in substance, is that the plaintiff was walking along the sidewalk, and came in contact with the wire, which, owing to the darkness, he was unable to see; that he attempted to remove the same from his pathway, and in doing so caught hold of the wire, and the electricity with which it was impregnated passed into his body, etc.; whereas his testimony shows that he was walking along the sidewalk, and, owing to the darkness and rain and the slippery pavement, he slipped and fell on his elbow, causing his hat to fall off and some packages to drop out of his hands, and that in groping for his hat and packages, his hand came in contact with the wire, which, being impregnated with electricity, "grabbed" it, and as he could not let go, he put out his other hand to remove the same, when the wire "grabbed" that hand, etc. Plainly the variation here is only of detail, or as to the circumstances under which the plaintiff came in contact with the wire, and received the injury. The elements of negligence

alleged, namely, in permitting its wire to come in con-
tact with the electric wire, and to hang so near the ground
as to endanger life or limb, are present in either aspect of
the case, or as much under the testimony as the allegation.
Such variance does not present a case where the cause of
action is unproved in its entire scope and meaning, within
the construction of section 98, Hill's Code.   Hence there
is not a failure of proof, and without such failure the vari-
ance is not fatal, or such as would entitle the defendant to
a judgment of nonsuit.

The principal ground of complaint remains, however,
to be considered.   This is, was the negligence of the
defendant the proximate cause of the injury?   There are
some other minor questions suggested by way of criticism
upon the charge of the court, but the remoteness of
defendant's acts, and the intervention of other agencies
directly contributing to plaintiff's injury are relied upon
as the chief defense.   It was the failure of the court, as
indicated by the instructions given and refused, to properly
apply the law in this regard, that constitutes the main
grievance of the defendant.   To comprehend the force of
this objection, we must first know and understand the
facts.

The plaintiff is a laboring man, and was employed by
the gas company to shovel coal into its furnace.   On the
day of the accident he quit work after five o'clock P. M.
and started for his home, but on his way went to market,
made some purchases, and went out G Street to Twenty-
first, and when passing down that street, near the corner
of K, he slipped on the sidewalk, and fell on his elbow,
his hat falling off, and the packages which he carried
flying out of his hands.   After he got up he groped for
his packages and hat, when his hand rubbed against a
wire, one end of which was hanging down over the side-
walk at the intersection of the street.   His testimony on
this point is:   "My hand rubbed against this wire, grasp-

ing hold of me fearfully. I then took the notion to put up this hand to hit this one away from there; it grabbed that one and held on to it fearfully. I could not let go; it was too strong. I don't know what part of my hand catched hold of it; my fingers rubbed it first. It tore me fearfully, like machinery with about two hundred pounds of steam. I was screaming awfully, and finally I saw people around the sidewalk, and this hand after awhile dropped from the wire; that must have been the time my toes got burned. It whirled me up in all sorts of shapes. I don't know how I was. When this hand dropped I hung on with it until I was released. After this hand dropped I had no more memory at all; I lost my senses. I don't know what happened after that." Several persons hearing his screams for help, two men ran from J Street to his assistance, and one of them slashed at the wire with his knife and received a severe shock, but did not sever it; after some hesitation he slashed it again and succeeded in cutting the wire. The defendant was assisted to his home and put to bed, when it was found that three toes were badly burned. Afterwards he was taken to the hospital and one toe was amputated and the others were trimmed off. It was after six o'clock and quite dark when the accident occurred, and the sidewalk was slippery from recent rain. The defendant could not see the wire, nor did he know that it was hanging down over the street, nor that it was charged with electricity. The wires of the telephone company were strung on K Street running east and west, and the wires of the electric-light company and the electric street-railway company were strung along Twenty-first Street running north and south, so that the wires of the defendant were at right angles to the wires of the two electric companies. The evidence further shows that the defendant had an arrangement with the electric-light company by which either might use the poles of the other upon which to string a wire when it had no poles at the

place, and only a short distance of wire was to be used; that the defendant used the poles of the electric-light company, when wiring the residence of a Mr. Bates at the corner of H and Twenty-first Streets, but that some three months before the accident the wire was disconnected from the telephone at his residence, and wrapped around the electric pole and made fast by tying it on to a bracket, and winding around the pole and around itself; that such wire had not been used by defendant after it was so disconnected, nor had the company made any inspection of it from that time until the accident; that during this interim the electric company changed its poles and wires along Twenty-first Street, and in doing so took down the pole belonging to it upon which the telephone wire was fastened as aforesaid, coiled up the wire, and hung it on a pole belonging to the defendant near K and Twenty-first Streets where the accident happened, but that the defendant had no knowledge that the electric company had taken down its poles or taken down its wire and hung it on the pole as aforesaid. Richard Gerdes testified that he was in the employ of the electric-light company, and that on the night of the accident he received a message by telephone that a man had been hurt by an electric-light wire; that he went at once to the place where the accident occurred, and found the wire hanging on the pole; that he cut it above the coil; that it was heavily charged with electricity by contact with a wire belonging either to the electric street-railway or the electric-light company; that it must have been the wire of one or the other that charged it with electricity, as there was no other heavily charged wire in that vicinity. The evidence further shows that the day before the accident the wire was hanging in the form of a coil on a stick at the side of the telephone pole, and that the bottom of it was two or three feet from the ground; that it was heavily charged with electricity, and that one witness who touched it with a wire was thrown to the ground from the shock.

Among other things, the court, in substance, instructed the jury that the question here submitted is "whether it was negligence or not to leave a wire along a public thoroughfare, where it might be found in the way of pedestrians, or where it might be liable to be handled or interfered with by boys or by irresponsible persons." That it was for them to determine from the evidence "whether or not there was a proper inspection made of these wires so as to know what their condition was, and to ascertain whether anybody had been interfering with them, making them more dangerous than they otherwise would be." That "the fact that this company used the poles of another company, and the fact that other electric companies had wires upon the same street, does not detract at all from the strict requirements which should be made of the defendant company. Unless it had loaned its wires to the electric company, or the electric railway company, and placed them under the control of that company, it could not be absolved from the duty of looking after them and ascertaining and knowing what their condition was, and of anticipating and foreseeing what might happen in connection with them, and that unless you should find from the evidence that this defendant had turned over the use and control of its wires to these other companies on whose pole this wire was suspended, you have no right to say that those companies were liable and not this company, if this company was guilty of any negligence. Unless this company was negligent, there could be no recovery on the part of the plaintiff. If you find that it was not guilty of any negligence, then your verdict should be for the defendant." The counsel for the defendant requested the court to instruct the jury as follows: "If the jury finds that the defendant was not negligent in leaving, its wire attached to the pole near Mr. Bates' house, as it did leave it, and that the wire was not dangerous as left by it, and could not, and did not, become dangerous except by

the act or neglect of some other person or company, the defendant is not liable"; but the court refused to charge as requested, but gave it with the following modification: "I give you that in connection with the general instruction which I gave you that the defendant must have parted with the control of its wires in order to be exonerated by the reason of the negligent act of some other person." The defendant also requested the court to charge that "It is claimed by the defendant that it placed its wires in a safe and secure position, and that it [they] did not become dangerous except by the acts and omissions of others, without its knowledge or consent. If you find this is true, the defendant is not liable, unless the intervening acts or omissions of such other persons should have been contemplated and guarded against by the defendant as consequences likely to follow and which might have been reasonably anticipated." And, again: "If it was not negligent in leaving the wire as it did, it is not liable, unless it could have reasonably foreseen that some one would take down the wire and place it where it injured the plaintiff, and that it might come in contact with some other electric wire that was charged with a current of electricity that would make it dangerous." And, again: "Even if the defendant had left its wire coiled up or hanging over the sidewalk so that pedestrians might come in contact with it, it would not be liable for damages to the plaintiff for injury sustained by an electric shock from the wire unless the fact that the wire left there was the immediate or proximate cause of the injury, the wire not by itself being dangerously charged with electricity, and became so charged only by intermediate circumstances, namely, that of interfering with or crossing some heavily charged wire," etc. The court refused to so instruct the jury, and to its rulings thereon the defendant duly excepted.

It appears from the instructions that the theory of the law as applied to the facts by the trial court was that it

is negligence to allow a wire, which, from its environment, is liable to become charged with electricity, to hang over the street at such a height as to obstruct and endanger ordinary travel; that it was the duty of the defendant, owing to the location of its wire, and the use of the poles of the electric-light company, to look after it and see that it was in proper condition, and that when the wire was disconnected from the Bates residence, if, instead of taking down the wire, the company chose to hang it upon the electric pole, the duty still devolved upon it to take care of such wire, and that this was a continuing duty from which it would not be absolved unless it had parted from the control of its wire to the electric companies. This requirement imposed upon the defendant the obligation of looking after and ascertaining the condition of its wire, and of anticipating or foreseeing results which were likely to happen by reason of its connection or location as to the electric wires, so as to avoid liability to danger arising therefrom. In this view of the law, the taking up of the pole by the electric-light company, and hanging the defendant's wire upon its pole at the intersection of K and Twenty-first Streets would not authorize the jury to find that the electric companies were liable, and not the defendant, if it was negligent in not removing its wire when it ceased to use it at the Bates residence. It is earnestly insisted by counsel that this view of the law is a wrong conception of the defendant's duty, for the reason that it makes the company liable for the wrongful acts of third persons in taking down the wire and hanging it on the pole where it became charged with electricity, which, he claims, are the responsible causes of the injury. This is based on the assumption that there intervened between the negligence of the defendant, if any there was, and the injury to the plaintiff, an independent adequate cause of the injury, namely, the wrongful acts of the electric company, which was the proximate cause of the injury. What is

the proximate cause of the injury is ordinarily a question for the jury. It is only when the facts are undisputed that it becomes a question for the court. Wherever, therefore, there is any doubt, the question of proximate cause should be submitted to a jury to be decided as a matter of fact according to the circumstances of the case. To warrant a jury in finding that negligence is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances. *Railway Co.* v. *Kellogg*, 94 U. S. 475. The question, therefore, whether the stretching of the defendant's wire on the electric poles instead of its own poles, and whether the omission of the defendant to remove the same when it ceased to use it at the Bates residence, was negligence, and, if it was, whether the intervening acts of the electric company and its consequences were such as could have been reasonably anticipated and guarded against by the defendant, was for the jury to determine in the light of the facts and circumstances.

The record discloses that the electric-light company gave the defendant permission to use its poles upon which to string its wire when the defendant needed them to connect its wire to a residence where it had no poles. When the defendant disconnected its wire from the telephone at the Bates residence, it had no longer any need to use the electric poles, and the permission or license given to use them ceased, or was at an end, and necessarily the defendant ought to have removed its wire from the electric poles; and if it did not do so, but coiled and hung it on one of them, where it had no right to be, the defendant was bound to look after it, and to expect, if it failed to do so, that the electric company would remove it when such wire incommoded that company, or its business required the removal of its poles as did happen. The jury found that the

XXIV. OR.—19.

stretching of the wire upon the electric poles was danger-
ous, and that the omission of the defendant to remove it,
when it disconnected the same from the Bates residence,
and ceased to use it, was negligence, and that the inter-
vening acts of the electric company and its consequences
could have been foreseen as likely to happen, or possibly
to follow, from leaving the wire coiled and hung upon the
electric pole near the Bates residence, and necessarily that
the defendant was responsible for its wire being coiled and
hung upon its own pole at the intersection of K and
Twenty-first Streets. This responsibility is based on the
principle that if the defendant, instead of removing its
wire, chose to hang it upon the electric pole, where it had
no right to be, it was bound to look after it, and that, if
the defendant had done so, it would have discovered the
removal of the same, and its condition, so that the injury
might have been avoided, and consequently that the com-
pany must be taken to have foreseen, as likely to happen,
or possibly to follow, the consequences which resulted from
its omission to remove the wire when it was disconnected
from the telephone at the Bates residence. This is in ac-
cordance with the rule that a person guilty of negligence
or an omission of duty "should be held responsible for all
the consequences which a prudent and experienced man
fully acquainted with all the circumstances which in fact
existed, whether they could have been ascertained by rea-
sonable diligence or not, would have thought at the time
of the negligent act reasonably possible to follow if they
had been suggested to his mind": Sherman & Redfield,
Negligence, § 29.

But this phase of the case is met with the argument
that the telephone wire itself is not dangerous, and that
the main or efficient cause of the injury was the electric
current from the wires of the electric companies, with the
production of which the defendant had nothing to do. In
other words, that if the defendant was negligent, it was

the dangerous force of electricity which intervened, and with the production of which the plaintiff had nothing to do, that communicated the injury to plaintiff, and, therefore, it was the proximate cause of the injury. It is no doubt true that where there is negligence and injury following it, and there is also an intermediate cause disconnected from the negligence, and the operation of this cause produces the injury, the person guilty of the negligence cannot be held responsible for the injury. The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury: *Railway Co.* v. *Kellogg*, 94 U. S. 475. If the intervening cause and its probable consequence be such as could reasonably have been anticipated by the original wrong-doer, the casual connection between the wrongful act and the injury is not broken, and the defendant is liable for the injury. In *Sewing Machine Co.* v. *Richter*, 2 Ind. Ap. 334 (28 N. E. 446), it is said: "Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but as a rule these agencies, in order to accomplish such result, must entirely supersede the original culpable act, and be in themselves responsible for the injury, and must be of such a character that they could not have been foreseen or anticipated by the original wrong-doer. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be an efficient cause of the injury." The intermediate cause must supersede the original wrongful act or omission, and be sufficient of itself to stand as the cause of plaintiff's injury, to relieve the original wrong-doer from liability. "One of the most valuable of the criteria furnished us by the authorities," Mr. Justice MILLER said, "is to ascertain whether any new cause has intervened between the fact accomplished and the alleged

cause. If a new force or power has intervened, of itself sufficient as the cause of the misfortune, the other must be considered as too remote": *Insurance Co.* v. *Tweed,* 7 Wall. 52. There is no claim that the wires of the companies transmitting electric power were not in their proper position, or that the companies were negligent in the use of their wires. We must take it, upon the facts as disclosed by this record, that their wires were where they had a right to be, and were not an obstruction endangering the life or limb of any one traveling along the street. It was the telephone wire, suspended on a pole, as shown by the evidence, that furnished the means by which the currents of electricity passing over the electric companies' wires were diverted and conducted so close to the ground as to render passage along the public thoroughfare exceedingly dangerous. As a consequence, it was the defendant's wire so hanging upon the pole that furnished the means by which the electric current was communicated to and injured the plaintiff. It is true that the electric current was a new power which intervened, and with the production of which the defendant had nothing to do, but it was harmless, or could not have been communicated to the plaintiff, but for the suspended wire of the defendant. As an intermediate cause it was connected with the primary fault and not self-operating, and therefore is not sufficient itself to stand as the cause of plaintiff's injury. The language of Mr. Justice BRUCE clearly illustrates this point: "To say that the agency of the telephone wire in the production of the injury was inferior to that of the electric current, which was the main cause, is not satisfactory. It is, in fact, to admit that the company's displaced wire furnished the means by which the dangerous force was communicated to and injured the defendant in error. True, it was a new force or power which intervened, with the production of which the telephone company had nothing to do, but upon this point in

*Insurance Co.* v. *Tweed,* 7 Wall. 52, the court says: 'If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote.' The new force or power here would have been harmless but for the displaced wire, and the fact that the wire took on a new force, with the creation of which the company was not responsible, yet it contributed no less directly to the injury on that account": *Southwestern T. & T. Co.* v. *Robinson,* 50 Fed. Rep. 813 (16 L. R. A. 545). It thus appears that the defendant's negligence was the primary and proximate cause of the injury. In view of this result, the other errors assigned are of little importance, and not such as would authorize the reversal of the case. It results that the judgment must be AFFIRMED.

### ON REHEARING.

[S. C. 35 Pac. 549.]

Mr. CHIEF JUSTICE LORD delivered the opinion of the court:

The suspended telephone wire, while it was charged with electricity from contact with the electric wire, was not less dangerous than the electric wire itself would have been similarly suspended as to the street. It was this condition of affairs that led the court in its charge to refer to electricity generally as a "subtle and dangerous agency" which required the "utmost caution to control." As the telephone wire was liable to become charged with such dangerous agent, and thus to become dangerous to the travelling public, the duty of inspecting and ascertaining the condition of the wires, and whether there was any interference making them more dangerous than they otherwise would be, was necessarily involved. In view of these circumstances, the degree of care imposed was commensurate with the danger. "Due care is a degree of care corresponding to the danger involved": Cooley, Torts.

It is not the same in all cases. The term is relative, and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose. Where the danger is great, a high degree of care is necessary, and the failure to observe it is a want of ordinary care under the circumstances. Hence a wire, liable to be charged with an agency so dangerous and difficult to manage, while so located, needed to be looked after with such a degree of care and vigilance as would guard the public against liability to accident from it. The court then said: "The question is here submitted to you whether it was negligence or not to leave a wire along a public thoroughfare where it might be found in the way of pedestrians, or where it might be liable to be handled and interfered with by boys or by irresponsible persons." It further added: "Negligence, in cases of this kind, means the doing of some act which a cautious and prudent man would not do, or the neglecting to do some act which a cautious and prudent man would not neglect. Applying those definitions to this case, the inquiry to be solved by you is, what did this defendant do that a cautious and prudent man would not have done in connection with the wire which has been described to you in the testimony, and which is mentioned in the pleadings?"

These instructions, taken in connection with the instructions referred to in the main opinion, we think fairly present the law governing the case. AFFIRMED.