(1 App. Div. 237.)

### DEVINE v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. February 4, 1896.)

1. NEGLIGENCE—ELECTRIC RAILROAD COMPANY—RAISING WIRES.

Whether the conduct of an electric railroad company in raising a feed wire on its poles, resulting in the death of a passer-by, was negligence, is not affected by the question whether that part of the avenue where the accident happened had been opened by legal proceedings, it being in public use as a public street.

2. SAME—NOTICE.

While an electric railroad company was raising on poles a feed wire, a small boy, starting to cross the street, stepped across the wire, which lay in the gutter, just as it was suddenly, without any notice of its presence or intention to lift it, raised, with such force that the boy was thrown many feet in the air. *Held*, that the company was negligent.

Appeal from circuit court.

Action by Michael Devine, administrator of James Devine, deceased, against the Brooklyn Heights Railroad Company. From a judgment dismissing the complaint, at close of plaintiff's evidence, plaintiff appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Almet F. Jenks, for appellant.

S. Stewart Whitehouse, for respondent.

BARTLETT, J. The complaint in this action alleges, and the answer admits, that on the 19th day of July, 1893, the defendant cor-

poration was constructing an electrical railroad through and along Second avenue, in the city of Brooklyn, and was engaged in stringing or hanging its cables or feed wires on iron posts erected on said avenue. The complaint further alleges that on that day, while James Devine, the plaintiff's intestate, was crossing Second avenue, the defendant, its agents and servants, conducted themselves so negligently that one of the cables or feed wires which they were at that time erecting, stringing, or hanging caught said James Devine, and carried him upward into the air a distance of about 20 feet, from which height he fell to the ground with such violence as to suffer injuries from which he died. This allegation of negligence was denied by the answer. The plaintiff gave evidence tending to support it, and, at the close of his case, counsel for the defendant moved for a dismissal, on two grounds: First, that the proofs failed to show any negligence on the part of the defendant or absence of contributory negligence on the part of the lad who was killed; and, second, that the place where the accident occurred had not been shown to be a public street. The court granted the motion, not on the ground that the place was not a public street, but because, in the opinion of the learned trial judge, the plaintiff had failed to prove any negligence on the part of the defendant.

The accident happened on Second avenue, between Thirty-Fifth and Thirty-Sixth streets. The evidence showed that, at the time of the accident, Second avenue, from Twenty-Eighth to Sixty-Fifth streets, was an open thoroughfare; that it was paved, curbed, and flagged; and that it was used as a public street by the people living in that district and the general public. In view of these facts, it was wholly immaterial, so far as the plaintiff's cause of action was concerned, whether that particular part of the avenue in which the accident happened had actually been opened by legal proceedings instituted by the municipal authorities. Second avenue, at that point, was in public use as a public street, and the plaintiff's intestate had just as much right there as the agents of the defendant. The trial court was right, therefore, in refusing to base the dismissal of the complaint on this ground.

But we do not think the complaint should have been dismissed at all. The testimony of those who witnessed the accident, if believed by a jury, would amply warrant the inference that the agents of the defendant did their work in a careless and negligent manner. They were engaged in hoisting an electric cable into position, on poles along the side of the street. Several hundred feet of this cable had been hung on the crossbars at the top of the poles, and allowed to drop down in loops. To get the cable into position, it was then hauled taut by means of a team at one end. The loop between Thirty-Fifth and Thirty-Sixth streets came down to the ground, and lay in the gutter for a distance of about 30 feet. While in this position, a group of lads, among whom was the plaintiff's intestate, a boy about eight years of age, started to cross the street. As James Devine stepped across the wire, the men engaged in stringing the cable gave the signal for the team to go ahead. The cable, as it was made taut, rose in the air, catching the lad between the

·legs, and tossing him ·up a distance of 20 or 25 feet.    The fall fractured his skull, and he died five days afterwards.

In granting the motion to dismiss the complaint, the learned trial judge seems to have acted upon the view that the cable was not in a place where it would be likely to entangle horses, vehicles, or persons, and that it was raised in such a slow manner that no negligence could be predicated of the way in which the work was done. "Any person passing over it," he said, "would know it was not a thing that shoots in the air, or was propelled in such a way as to strike persons suddenly, and injure them."    It seems to us, however, that a cable or wire, lying in the bed of a gutter, on a public street, for a distance of 30 feet or more, is something which is extremely likely, in the ordinary course of things, to interfere with the free use of the street by persons entitled to use it, particularly when it is liable at any instant to be raised from its position to a height ·of many feet above the ground.    To put a cable or wire in such a place, and raise it suddenly, without taking any means to notify persons on the street of its presence or the intention to lift it, would ·clearly be negligent as to any one lawfully upon the street, and who was injured thereby, while in the exercise of due care himself.    The assumption that the ·movement of this particular cable, on this particular occasion, was slow, is directly at variance with the proof. If the cable had moved slowly, it would be utterly impossible, in the ·nature of things, that the deceased lad should have been thrown 20 feet up into the air.    The eyewitnesses of the accident agree upon this point, and, for the purposes of the present appeal, their testimony must be taken as true.    The inference to be drawn from it is that the motion of the cable, instead of being moderate, was more like that of a bow string when an arrow is discharged.

We are clear that there was a question for the jury in this case. The judgment appealed from must be reversed, and a new trial granted; costs to abide the event.    All concur.