## SOUTHWESTERN LIGHT & POWER CO. et al. v. FOWLER.

No. 16425—Opinion Filed April 13, 1926.

Withdrawn, Corrected, Refiled, and Rehearing Denied Oct. 12, 1926.

### 1. Electricity—Duty of Care by Company Maintaining High Voltage Wires.

Companies which manufacture and conduct electricity over their high voltage wires, along public highways and streets of cities, for sale to their consumers owe the highest

degree of care for the safety of persons from the danger of the deadly agency. The duty is owing to all persons, in all places, wherever they may be rightfully.

**2. Same.**

It is the duty of electric companies in conducting electricity over high voltage wires along the public highways and streets to use that degree of care commensurate with the dangers of the service to confine the deadly agency within its usual and proper zone of travel.

**3. Same—Recovery for Negligent Death by Electrocution—Remittitur Required.**

Record examined; held, that on the evidence the verdict is excessive; further held, that if the defendant in error shall file a remittitur in this cause for $5,000 within 15 days, the judgment will stand affirmed; otherwise, the cause is reversed and remanded for new trial.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by Frank Fowler, as next of kin of Frank Fowler, Jr., for damage against the Southwestern Light & Power Company and John Carroll, its superintendent. Judgment for plaintiff, and defendant brings error. Affirmed.

Ross & Thurman, for plaintiff in error.

Suits & Hall, for defendant in error.

Opinion by STEPHENSON, C. The Southwestern Light & Power Company was engaged in the manufacture and conduct of electricity, over high voltage wires, along the public highways and streets in the city of Snyder. A high voltage wire passed along a public highway by the old Taylor home to the pump plant. Several lots fronting on the highway, situated about 30 feet east of the Taylor house, were enclosed with two strands of barbed wire. The plot of ground was entered at the northeast corner, through a gate situated about 150 feet east of the Taylor house. The electric company had placed a telephone wire from its plant in the city of Snyder to the pumping plant, on the polls supporting the high voltage line. The use of the telephone line had been abandoned for sometime prior to the accident. The line had become broken at several places. A portion of the line had been rolled into hoop fashion, and hung on the gate entering the plot of ground. The other end of the telephone wire was attached to a pole, which supported the high voltage wire; the poll stood about six feet from the Taylor house. The roll of telephone wire at the gate came in contact with the top barb wire which surrounded the plot of ground. The Taylor house was set on fire from some unknown cause, which attracted plaintiff's decedent and a number of other citizens to the city to the place of the fire. Plaintiff's son was standing on the east side of the plot of ground, with his hand resting on the barb wire fence. The son was located about 30 feet east of the house, about 50 feet north of the high voltage line, and about 150 feet from the gate, according to the pathway of the barb wire. The fire from the burning house caused some of the high voltage wires to separate and fall on to the telephone wire. The contact charged the barb wire at the gate, and caused the electrocution of plaintiff's son, while situated at a place about 50 feet north of the high voltage wire, and about 150 feet from the place where the telephone wire made contact with the barb wire.

The father commenced his joint action against the electric company, and its superintendent, to recover damages for the wrongful death of his son. The trial of the cause resulted in judgment for the plaintiff. The defendants have perfected their appeal, and assign several errors for reversal. The main errors assigned to go to the question that the judgment is contrary to the law and the evidence.

The rules of law applicable in this appeal lie within the compass of clear propositions of law, which, to be assented to, need only to be stated:

(a) Companies, which manufacture and conduct electricity over their high voltage wires, along public highways and the streets of cities, for sale to the consumers, owe the highest degree of care for the safety of persons from the dangers of the deadly agency.

The following rule is a necessary consequence of the foregoing rule:

(b) It is the duty of electric companies, in conducting electricity over high voltage wires, along public highways and streets, to use care commensurate with its dangers to confine the deadly agency within its usual and proper zone of travel.

Counsel for appellants, in oral argument, admit that the telephone wire had remained in its situation a sufficient length of time before the burning of the house to charge the defendants with notice of the condition, by the exercise of ordinary care. The appellants assert that the condition and situation of the telephone wire are immaterial facts in the question of liability of the de-

fendants for the death. It is contended by the appellants that the burning of the house was the proximate cause of the death of plaintiff's son, and that the appellants could not foresee the burning of the house, by the exercise of the highest degree of care. The house was vacant and had been unoccupied for some two or three years before the fire. The lots on which the house was situated were not enclosed. The plot of ground and the house fronted on the public highway, on which was situated the high voltage wire and telephone wire.

The appellants do not contend that the presence of plaintiff's son near the fire, on the vacant lots, was the result of the latter's contributory negligence, or wrongful act in relation to the electric company. The position of the appellants on this question is clearly set forth as follows:

"In order to further clarify the issues we might state in this connection that we do not rely upon the point that the deceased assumed the risks of danger incident to the place where he was, or that he was guilty of contributory negligence."

The appellants submit that their liability rests upon the exercise of the proper degree of care, as shown by a statement contained in their brief as follows:

"We maintain that the petition and proof show that the defendant's business was conducted in the regular and ordinary course."

However, we assume that the position of the appellants in relation to this question follows from prior decisions on like questions. Hornsby v. Davis, (Tenn. Ch. App.) 36 S. W. 159; Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 South. 979; Alabama Power Co. v. Jones (Ala.) 101 South. 898; Moore v. City of Bloomington (Ind. App.) 95 N. E. 374.

The cause of the son's death was coming in contact with a wire carrying a high voltage of electricity. The barb wire became charged through contact with a telephone wire attached to a poll carrying the high voltage wire. The telephone wire was so situated and attached to the poll that contact was a probable and natural consequence from the separation of the high voltage wire. The sending of the deadly voltage along the barb wire was a diversion of the deadly current from its normal and usual zone of travel, as the result of a condition of which the appellants stand charged with notice. The burning of the Taylor house was not the proximate cause of the son's death; it was an incident involved in the chain of circumstances which resulted in the un-

timely death of the son. The barb wire was charged on account of the separation of the high voltage wire, which was a natural and probable consequence of the telephone wire being attached to the poll under the high voltage wire.

The negligence of the defendants was in permitting a condition which sent the deadly current out of its usual zone of travel. It is not material what concurring cause or means set the dangers in motion, unless the concurring means superseded the negligence of the defendants.

Ahern v. Oregon Tel. & Tel. Co., 24 Ore. 276, 33 Pac. 403, 35 Pac. 549, 22 L. R. A. 635, was a case where the telephone company, while stringing one of its wires, permitted the end of the wire to hang down in the street. The wire, in some way not shown by plaintiff's pleading, became charged with a high voltage from an electric line. The telephone company urged that it was not responsible, for the reason that it was not shown that the telephone wire became charged on account of the company's negligence. The court said in this respect:

"Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but, as a rule, these agencies, in order to accomplish such results, must entirely **supersede the original culpable act** and be in themselves responsible for the injury, and must be of such a character that they could not have been foreseen, or anticipated by the original wrongdoer. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will **not exculpate** the other, because it would still be an efficient cause of the injury."

The case of Sewing Machine Co. v. Richter, 2, Ind. App. 334, 28 N. E. 446, is cited in support of the rule.

The defendants cannot rely on the happening of an intervening agency to relieve it from liability, unless the intervening agency entirely supersedes the original culpable act of negligence on the part of the defendants.

In the instant case, the telephone wire was a necessary link in the chain of circumstances for the burning of the Taylor house to result in charging the barb wire fence which produced the death of plaintiff's son. If the telephone wire had not been so situated, the burning of the house would have been harmless for the plaintiff's decedent.

The question involved in the appeal of Southern Bell Tel. & Tel. Co. v. Ellis (Ga. App.) 87 S. E. 766, is similar to the question

in the instant case. The plaintiff's decedent caused the appellants to install a telephone in his residence, where it remained in use for sometime. The telephone was later removed and the connecting wire left lying in the yard. The decedent, after the telephone had been disconnected for several days, went out in the yard after dark, and came in contact with the loose telephone wire. The telephone wire in some way had become charged with a high voltage of electricity, and the contact of the telephone wire resulted in the death of plaintiff's decedent. The plaintiff relied on the following allegations for recovery:

"Charles Ellis was killed by the electricity which was contained in the wires of said defendant company which were in plaintiff's yard, in the alley adjoining plaintiff's yard, and which were attached to the plaintiff's house, and that said wires charged the post or pillar of plaintiff's house with electricity, and that the electricity from said post or pillar killed the said Charles Ellis."

The court said in passing on the sufficiency of the evidence:

"In our opinion the evidence was sufficient to show that the death of the plaintiff's husband was due to electricity conveyed by the defendant's wires, and that the failure of the defendant to remove these wires was such negligence as charged the defendant with liability for any probable result occasioned by this negligence. Certainly, it would not do to hold that, if (on account of the failure of the telephone company to perform its duty of inspection) the line of wire used in making the connection between a customer's telephone and the central station of the telephone company were brought in contact with another company's wires, charged with electricity of such powerful voltage as to be dangerous to life, the telephone company would not be liable for any injury resulting from the failure to inspect, if the jury found the neglect of the duty of inspection to be negligence. A telephone company using wires upon poles as a means of communication owes its patrons and the public the duty to so maintain its lines of communication as not to endanger their safety, lives or property. We do not understand that counsel for the plaintiff in error insist to the contrary, but it is contended that since Ellis had his telephone removed, and the contractual relation theretofore existing between him and the telephone company had terminated, there remained no duty on the part of the telephone company as to him, and that the failure to remove the wires which had previously afforded the connection between his house and the central station of the company was not negligence as related to him, that the wire was left on the poles and was permitted to remain attached to

his house at his own request, and that the wire was disconnected from the main line by being cut, and was thus also disconnected at his house."

It does not appear in the foregoing case that plaintiff was advised of the cause which resulted in the charging of the wire. The evidence does not show in what manner the telephone wire came in contact with the high voltage of electricity.

The case of Southern Bell Tel. Co. v. Howell (Ga.) 53 S. E. 577, presented a similar question on general demurrer to the petition. The court disposed of the demurrer in the following language:

"There was no special demurrer for want of sufficient fulness in any particular allegation; but the demurrer filed was general in its nature. As against such a demurrer the petition stated a good cause of action. An allegation that a telephone company while engaged in stretching wires along a public street of a city, permitted one of them to sag while charged with electricity, or to become heavily charged with electricity while thus sagging, at a place where it was likely to injure pedestrians, and gave no warning of the danger arising from such charge, sufficiently stated a case of negligence to withstand the demurrer. See Jones v. Finch, 128 Ala. 217, 29 South. 182; Haynes v. Raleigh Gas. Co., 114 N. C. 203, 19 S. E. 344, 26 L. R. A. 810, 41 Am. St. Rep. 786; Ahern v. Oregon Tel. Co., 24 Ore. 276, 33 Pac. 403, 35 Pac. 549, 22 L. R. A. 635; Devine v. Brooklyn Heights Co., 1 App. Div. 237, 37 N. Y. Supp. 170; Texarkana Gas & Elec. Co. v. Orr, 59 Ark. 215, 27 S. W. 66, 43 Am. St. Rep. 30; Burns v. Delaware & Atlantic Tel. Co., 70 N. J. Law, 745, 59 Atl. 220, 592, 67 L. R. A. 956."

The case of Western Union Tel. Co. v. State, for use of Nelson, 82 Md. 293, 31 L. R. A. 572, 51 Am. St. Rep. 464, was an action for the death of a child about eleven years of age, who came in contact with appellant's telegraph wire. It appears that in some manner, not explained by the pleadings, a wire of the appellant company remained hanging from a cross-arm into the street. It was not shown how long the wire remained in this position. The wire became charged with electricity from a high voltage wire, and while the child was walking along the street, it came in contact with the wire, which resulted in the death of the child. The right of the plaintiff to recover for the death of the child was sustained on appeal. The court disposed of the appeal in the following language:

"On the other hand, both of the defendants were using the streets under the permission of the state and municipal authori-

ties, for purposes of private gain, by means of agencies such as could and would become dangerous to human life if not properly and carefully employed. The railway company pursued its business by means of cars propelled by electricity, partially supplied through feed wires over and along the edge of the pavement. The telegraph company had its poles also along the curb line, and its wires extending along the street were over and along the feed wire, which, though insulated, carried a deadly current. The privileges so granted, thus to incumber the public highway with appliances so likely to become dangerous to the public safety unless properly employed and controlled, imposed upon them, and each of them, the duty of so managing their affairs as not to injure persons lawfully on the streets. They owed it to Nelson that his lawful use of the streets should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty, not only to properly erect their plants, but to maintain them in such condition as not to endanger the public. It follows from this, that if the property of the defendants was not in proper condition, and by reason thereof, Nelson was injured, these facts alone, in the absence of other evidence to show that the defect originated without the fault of the companies, afford a prima facie presumption of negligence."

The right of the plaintiff to recover for damages for coming in contact with the charged wire was sustained in the foregoing case. The charged wire was not a means used by the electric company to conduct the electricity for the use of its consumers. The wires resulted in conducting the deadly current to points and along ways not required in the ordinary and usual conduct of the electric company's business. The appellants in the instant case were responsible for the electric and telephone wires. The following cases support the rule: Commonwealth Public Service Co. v. Lindsay (Ark.) 214 S. W. 9; Brown v. Edison Elec. Illuminating Co., 90 Md. 400, 46 L. R. A. 745, 78 Am. St. Rep. 442, 45 Atl. 182, 7 Am. Neg. Rep. 253; Wehner Elec. Co. v. Lagerfelt (Tex. Civ. App.) 66 S. W. 221; Citz. Tel. Co. of Texas v. Thomas (Tex. Civ. App.) 99 S. W. 879; Eining v. Georgia Ry. & Elec. Co. (Ga.) 66 S. E. 237; Lafayette Tel. Co. v. Cunningham (Ind. App.) 114 N. E. 227; Hagertown & F. Ry. Co. v. State, for the Use of Weaver (Md.) 115 Atl. 783; Morrison v. Appalachian Power Co. (W. Va.) 84 S. E. 506.

The concurring negligence of the defendants in this case, in permitting the telephone wire to be and remain where it caused the high voltage from the electric wire to be transmitted along the line of such wire, not used by the company in the conduct of its business, renders the defendants liable for the death of the plaintiff's son.

The appellants raise the question that the verdict of the jury for $11,000 is excessive. The plaintiff was in the employ of some railway line as a conductor, which required him to be absent from his home for a considerable portion of the time. The evidence discloses that the plaintiff had an older son, although his age is not given. The decedent, according to the proof, was able reasonably to earn the sum of $18 per week, at the time of his death. The son was about the age of 16 years and a bright, energetic boy. The measure of damages for the plaintiff in this case is the pecuniary loss suffered by him in the death of his son. The loss is determined by the sums of money, the acts and services of a pecuniary value, which the son would likely have earned and contributed for the benefit of his father, except for his death. Kaw Boiler Works v. Frymyer et al., 100 Okla. 81, 227 Pac. 453. The father was entitled to the services and earnings of his son during the minority of the latter.

The service of the son, in looking after the household affairs of the plaintiff, and being at home after work hours on account of the absence and employment of the father, was a valuable service to the latter. It is sometimes difficult to measure in dollars and cents the damages suffered by the parent on account of the loss of a minor child. The evidence in this case would not support a recovery for the son's death for contributions from his earnings after the majority of the latter.

It is apparent from the record in this case that the verdict of the jury in the sum of $11,000 is excessive. It appears that the verdict is excessive to the extent of $5,000. Oklahoma Portland Cement Co. v. Dow, 98 Okla. 44, 224 Pac. 168; Muskogee Elec. Traction Co. v. Richards, 97 Okla. 61, 222 Pac. 265.

Some of the cases from other states, which considered the question of excessive damages for the wrongful death of minor children, are: Florida East Coast R. Co. v. Hayes, 66 Fla. 589, 64 South. 274; C. & O. R. Co. v. Ward, 145 Ky. 733, 141 S. W. 72; Swan v. Boston Store, 117 Ill. App. 349; L. & N. R. Co. v. Taylor, 31 Ky. L. Rep. 1143, 104 S. W. 776; L. & N. R. C. Co. v. Engleman, 146 Ky. 19, 141 S. W. 374; Ellis v. Metropolitan St. R. Co., 234 Mo. 657, 138 S. W. 23;

Corbett v. Ore. Short Line R. Co., 25 Utah, 449, 71 Pac. 1065.

In the case of Chicago City R. Co. v. Riddick, 139 Ill. App. 160, for the death of a two-year old boy, the judgment was reduced from $10,000 to $6,000.

If the defendant in error shall file a remittitur for $5,000 within 15 days from date, the judgment will stand affirmed; otherwise, the cause will be reversed for new trial.

The appellants complain of an instruction to the jury authorizing recovery for funeral expenses. This question was taken into consideration in directing the remittitur, and it will not be necessary to pass on this question directly in this appeal.

The judgment is affirmed subject to the plaintiff filing remittitur for $5,000 within 15 days from date.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. p. 341 §35; p. 347 §39. (2) 20 C. J. p. 347 §39. (3) 4 C. J. p. 1129 §3122; 17 C. J. p. 1350 §235. See under (1, 2) anno. 14 A. L. R. 1023; 17 A. L. R. 833; 19 A. L. R. 801; 36 A. L. R. 181; 39 A. L. R. 490; 9 R. C. L. p. 1201; 2 R. C. L. Supp. p. 942; 4 R. C. L. Supp. p. 641. (3) anno. L. R. A. 1916C, 820.