Argued December 19, 1952, affirmed January 14, 1953

STREUSER *v.* PORTLAND TRACTION COMPANY

252 P. 2d 546

*Clayton Hess,* of Portland, argued the cause for appellant. With him on the brief was William B. Murray, of Portland.

*H. H. Phillips,* of Portland, argued the cause for

respondent. With him on the brief were Griffith, Phillips & Coughlin and James K. Buell, of Portland.

Before BRAND*, Chief Justice, and ROSSMAN, LUSK, LATOURETTE** and TOOZE, Justices.

LUSK, J.

This is an action to recover damages for personal injuries based on negligence. The court directed a verdict for the defendant, and from the consequent judgment the plaintiff has appealed, assigning as error the court's allowance of the defendant's motion for a directed verdict.

The plaintiff was injured in an accident which occurred at about 11:30 p. m. on January 5, 1950, apparently somewhere in the intersection of Southwest First avenue and Madison street in Portland, Oregon. Plaintiff claimed that a bus, owned and operated by the defendant company, ran over his left leg, as a result of which the leg was broken. He alleged in his amended complaint that he was waiting for the defendant's Eastmoreland bus, and, when the bus approached, he stepped forward to offer himself as a passenger; that he then saw that the bus was not going to stop and stepped backward to avoid being splashed with water, snow and slush, which was then quite deep upon the street; that in so doing his foot slipped and he fell, his left leg extending into the street approximately two feet, and that the driver of the bus negligently ran the wheels of the bus over his left leg. The charges of negligence are, that the driver failed to keep a proper lookout for the plaintiff; that he drove at a high, dangerous and reckless rate of speed under

* Chief Justice when this case was argued.
** Chief Justice when this opinion was rendered.

the circumstances; that he failed to keep the bus under proper or any control; that he failed to swerve the bus to the left; and that he failed to stop and accept plaintiff as a passenger. The original complaint did not allege the exact part of the intersection at which the accident occurred. On the trial, however, and after all the evidence had been submitted and counsel for the respective parties had made their final arguments to the jury, the plaintiff asked, and was granted, permission to amend his complaint by alleging in substance that the accident occurred at the *northeast* corner of Southwest First avenue and Madison street. It was after this ruling that the court allowed the motion for a directed verdict.

Plaintiff's testimony discloses the following: On the afternoon of January 5, 1950, he left his home for downtown Portland, and at about the hour of three o'clock arrived at a beer tavern called the LaSalle Cafe, which is located on the west side of First avenue about 100 feet south of the southwest corner of Madison street and First avenue. He spent some time at the LaSalle Cafe, left there to do some marketing, returned to the LaSalle Cafe around six o'clock for a short time, went out for dinner, and returned again to the LaSalle Cafe about seven o'clock, where he remained until about ten minutes after eleven o'clock. During the various times that he was in the LaSalle Cafe he consumed an indeterminate number of beers: according to a statement made by the plaintiff to a police officer after the accident, "at least one dozen"; according to the proprietor of the cafe, "maybe five or six or seven or ten"; according to the plaintiff himself, two beers in the afternoon, one about 6 p.m., and two more after seven o'clock. Whether plaintiff was drunk, as defendant claims, is not for us to say. We call attention to the

testimony in this regard merely because it may help to account for the extraordinary contradiction between established facts in this case and the plaintiff's sworn testimony.

First avenue runs north and south and Madison street east and west, and they intersect at right angles in the downtown section of what is known as the west side of Portland, that is, the west side of the Willamette river. Eastmoreland, the section of the city in which plaintiff lived, is on the east side of the river. The defendant's busses, leaving Eastmoreland for the west side, cross the river by the Hawthorne bridge and proceed west on Madison street to Second avenue, where they turn north and then make a loop back to Madison street at Fifth avenue, proceeding thence east on Madison street for the return trip to Eastmoreland. There is a bus stop at the northeast corner of the intersection in question, and sometimes persons desiring to go to Eastmoreland take the bus there and ride around the loop before starting east on Madison to their destination.

That, however, is not what the plaintiff did, according to his testimony. He swore that on leaving the LaSalle Cafe for the last time he walked north on the west side of First avenue to the southwest corner and stood there waiting for an Eastmoreland bus to come along Madison from the west. He was thoroughly familiar with the intersection and the operation of the busses. He testified that for 18 years he had been taking the bus at this place. He stood leaning against a window of a clothing store which is located at the southwest corner. He noticed that a tavern called the Moon, located at the southeast corner, was open. He testified that he did not go in there and did not cross the street at all. He did not notice whether another

tavern called the Gayety, located at the northwest corner, was open or not. While he waited two busses passed him, one a Beaumont and the other a Hawthorne bus, both going east on Madison street and across the bridge. He did not notice whether any busses went west, as he was looking for an eastbound Eastmoreland bus. There was no one else there. Presently the bus approached by which he claims he was injured. On the south side of Madison street, about 100 feet west of the corner where the plaintiff was standing is located the Old Glory Cafe. The plaintiff testified that when the bus was close enough so that he was able to read the sign on it, it "was right there at the Old Glory." When the bus got within 40 or 50 feet of him and he was sure that it was an Eastmoreland bus he stepped out to the curb. At that time he had his right hand on a post at the curb which carries a coach sign and in his left hand a sack of groceries. When the bus got to the Old Glory it started to slow down, but, after it passed the cafe, it sped up. He described the happening of the accident in this manner:

"Well, the East Moreland got about 60 or 75 feet from me and I stepped out to the curb and the bus seemed to kind of slow up a little bit and all of a sudden he speeded up again and I jumped back to get out of the slush so it wouldn't splash me because other busses had splashed me clean out to the center of the sidewalk, so I stepped out of there and slipped and fell down and my left leg went out over the curb and the hind wheel of the bus hit my leg."

He testified that when he turned and slipped he looked at the traffic light at the intersection to see why he had speeded up and noticed that the light had turned to yellow before the bus got across the street (meaning First Avenue) and that he saw the bus cross First

avenue, but that he was "out" before it got to Front avenue, which is the next street east from First avenue. His last recollection was of crawling up toward the clothing store, and he did not regain consciousness until he woke up in the hospital the next morning. He stated on cross-examination that he had never caught an Eastmoreland bus on the northeast corner of the intersection and ridden around the loop and thence to Eastmoreland, and that he was willing to stand or fall on his testimony that the accident happened on the southwest corner of the intersection.

Other evidence in the case, however, demonstrates that the plaintiff was not injured at the southwest corner. At about eleven-thirty that night the witness Chris Spielmaker found the plaintiff sitting or lying in the doorway of a building occupied by the Harmony Cafe— which was closed—at the northeast corner of the intersection. He was on a step above the sidewalk. He was bleeding and blood was running down to the gutter. His sack of groceries was "busted", and potatoes and onions and packages of tobacco were strewn over the sidewalk. Some of the onions had rolled into the gutter. The plaintiff told Spielmaker that a bus had hit him. Spielmaker called the police, who arrived in a few minutes and whose testimony corroborated Spielmaker as to the plaintiff's position, the blood and the vegetables. The police also testified that they observed small spots of blood, one about 18 feet east of the east curb line of First avenue and two feet south of the north curb line of Madison street, and the other about five feet east of the east curb line of First avenue and 100 feet north of the north curb line of Madison street. One of the police officers examined the entire intersection and found no traces of blood or groceries except at the northeast corner.

Defendant's evidence tended to show that none of its busses had collided with the plaintiff or anyone else that night at or near the intersection in question. The operators of such busses knew nothing of the accident until questioned about it by the police.

■ Plaintiff, a man 60 years of age, suffered a comminuted fracture of the left leg below the knee and a laceration on the inner side of the thigh right above the knee two to three inches wide and about eight and one-half inches long and one to one and one-half inches deep. He was unconscious—"out", as he expressed it —within a few seconds after the accident. It is a sufficient strain on credulity to be asked to believe, as the plaintiff asks this court to believe, that a man in that condition, especially one of plaintiff's age, could have dragged himself or crawled from the southwest corner to the northeast corner of the intersection. It is impossible to believe that he did so carrying with him his sack of groceries, which remained intact and did not break until he reached the sidewalk at the corner diagonally opposite to that where he testified he was injured. But, even though it were permissible under other circumstances to hold that a jury could have properly found that the accident occurred at the southwest corner, that result is precluded by the plaintiff's amendment to his complaint alleging that the accident occurred at the northeast corner. Counsel for the plaintiff sought and obtained the amendment in the court below upon the representation that his purpose was to make the pleading conform to the proof. The motion for the amendment reads:

"MR. HESS: I want to make a motion at this time to amend the complaint in order to conform to the proof by inserting before the word 'corner' and where it says 'corner of S. W. First Avenue and

Madison Streets', by inserting the word 'northeast', for the reason that I would rathen rely upon the evidence in this case, physical evidence as to where this accident happened, the exact spot, than I would upon the probably mistaken testimony of the plaintiff as to the exact spot the accident happened.''

This motion was a solemn judicial concession that the accident did not occur at the southwest corner. It was equally a solemn judicial concession that the bus, whose movements were described by the plaintiff in his testimony, did not injure him, for that would have been a physical impossibility. It left the case without any evidence at all as to how the plaintiff was injured, other, possibly, than his statement to the witness Spielmaker that a bus hit him; and this, of course, is no evidence of negligence.

In this state of the record, to yield to plaintiff's contention that the jury should have been permitted to find either that the accident occurred as testified to by the plaintiff, but plaintiff was simply mistaken as to the corner on which he was waiting for the bus, or that he was struck on the southwest corner and dragged himself to the point where he was found, would be to trifle with the judicial process.

■ The case comes to this: The plaintiff, in his sworn testimony, has given a circumstantial account of an injury which he suffered through the alleged negligent operation of the defendant's bus, which he was intending to board while it was being operated in an easterly direction on the south side of Madison street and approaching First avenue. The complaint as amended alleges, and the proof is, that the plaintiff received an injury at the northeast corner of the intersection. The cause of that injury is undisclosed. It was certainly

not the negligent operation of the bus concerning which the plaintiff testified, with such a wealth of detail, for that is an obvious impossibility. Hence, there is a complete failure of proof.

3. Plaintiff argues that a variance between the complaint and the evidence as to place is not material. Generally speaking, that may be conceded. *Ahern v. Oregon Telephone Co.*, 24 Or 276, 33 P 403, 35 P 549, 22 LRA 635; §§ 1-1001 and 1-1002, OCLA; 71 CJS 1108, Pleading, § 543; 41 Am Jur 551, Pleading, § 376. But such a variance may become material. 41 Am Jur 552, Pleading, § 378. It may amount to a "failure of proof." § 1-1003, OCLA. The section just cited provides that when "* * * the allegation of the cause of action * * * to which the proof is directed is unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance within the two last sections, but a failure of proof." Certainly, when plaintiff found it advisable to amend his complaint in order to conform to the proof as to the place of the accident, evidence of the negligent operation of a bus of the defendant at some other place became immaterial. The necessity then arose, in order to make a case sufficient to go to the jury, to supply evidence of the negligent operation of a bus which could have caused, and did cause, the injury. Such evidence was never supplied, and its lack constitutes a fatal defect in the plaintiff's case.

The court was right in directing a verdict for the defendant, and the judgment is affirmed.