JOHN McGREGOR

*v.*

REID, MURDOCH & CO.

*Opinion filed February 17, 1899—Rehearing denied April 6, 1899.*

1. MASTER AND SERVANT—*servant does not assume risk of master's negligence.* A porter employed by the occupant of a building to receive goods in the basement and carry them to the upper floors on a freight elevator, but not to operate the latter, does not assume, as matter of law, the risk of injury arising from the master's failure to keep the safety devices of the elevator in working order.

2. SAME—*master's negligence not cured by intervening negligence of third parties.* That elevator cables are put in by independent contractors does not relieve the master from liability for an injury received by his servant from the falling of the elevator, caused by the pulling out of the cables, where the elevator was equipped with safety devices which would have prevented the fall had the master used reasonable care to keep them in working order.

3. SAME—*effect of public inspection of elevators on master's duty to servants.* Inspections of freight elevators by city officers and indemnity companies at stated intervals do not, as a matter of law, relieve the owner of the elevators from all liability for the defective condition of their safety devices, particularly where such devices were not tested at such inspections.

4. NEGLIGENCE—*whether facts proven show negligence is ordinarily for the jury.* Whether the occupant of a building knew the defective condition of the safety devices on the elevators which were used by his servants, or could have discovered it by the use of ordinary care, or had taken proper precautions to prevent injury, are questions of fact for the jury.

5. TRIAL—*credibility of witnesses and weight of evidence are for the jury.* The credibility of witnesses, the weight of the testimony, the drawing of inferences of fact from facts proven, are all questions for the jury to pass upon, and not for the court to decide.

*McGregor v. Reid, Murdoch & Co.* 76 Ill. App. 610, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

WING & CHADBOURNE, for appellant.

WALKER & EDDY, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The appellee, a corporation, carried on the business of a wholesale grocer in a four-story building, and operated two freight elevators to carry its goods from one floor to another. Appellant was a porter employed by appellee to receive goods into the basement and take them up to the several floors on one of these elevators,

but not to operate the elevator, that duty being performed by another employee. On November 15, 1894, appellant, in performance of his duties, placed a truck containing half a dozen cases of catsup on the elevator, got on himself, and with this freight was taken up to the third floor, when the wire cables by which the elevator was suspended and drawn pulled out of their sockets at the top of the elevator frame, and the "dogs," a safety appliance attached to the elevator and designed to set and press into the sides of the shaft and thus prevent the elevator from falling in such emergencies, failed to set, or at least perform its functions, and the elevator fell to the basement, greatly injuring the appellant. Appellant brought this action in the superior court. The judge instructed the jury to find the defendant not guilty, and the Appellate Court has affirmed the judgment rendered on the verdict.

There were five counts in the declaration, in one or more of which the defendant was charged with negligence in this: that instead of having and keeping the said elevator in a reasonably safe condition, as it was its duty to do, it carelessly permitted the cables to be and remain so improperly and insecurely fastened to the elevator that they pulled out, and the elevator fell and injured the plaintiff. In others it was charged, in addition, that the "dogs," a safety appliance, was not of sufficient strength to hold the elevator; and in others, that this safety appliance was out of order, and for that reason failed to set and keep the elevator from falling. It was also alleged that the plaintiff was using due care for his own safety and was ignorant of these defects, and that the defendant knew of them or by the use of ordinary care and diligence could have known of them. The evidence was clear, and even undisputed, that the cables were insecurely fastened in their sockets at the top of the elevator. New cables had been put in but little more than six months before the accident, and it was shown that

they pulled out because when they were put in they were not properly and securely fastened. It was also shown that the safety appliance was of a kind the best and most approved in use, and if properly adjusted and in good order would automatically have so set and pressed into the sides of the shaft, or slides there, as to securely hold the elevator and prevent its falling more than a few inches. The freight carried at the time was of much less weight than was often carried and the capacity of the elevator permitted.

The ground upon which the instruction was given, and upon which it is defended here, was and is that there was no evidence upon which the jury, acting reasonably within the rules of law, could base a verdict against the appellee, and which would have been sufficient, in law, to support such a verdict if it had been found. If the proposition be true that there was no such evidence, the instruction was properly given, otherwise not. In considering this question we start with the assumption that the defects in the machinery complained of did in fact exist, for, as to defects in the fastenings of the cables, they were not only proved but not controverted; and as to the "dogs," or safety appliance, the evidence tended strongly to show that if kept in good order it would with reasonable certainty have held the elevator and prevented it from falling. An expert witness, Jallings, testified that with such a safety device in good order on the elevator it would have dropped only about an inch and three-quarters; that in putting in elevators he had repeatedly, at high elevations, cut the cables to let the elevator drop while he was standing on it, and thus demonstrated the all but absolute safety of these "dogs" as a safety appliance. The witness Anderson testified that he operated this elevator from 1890 until near the time of the accident, in 1894, was there when it was inspected from time to time by the city inspectors and by others procured by appellee, and that no test of the safety de-

vice was ever made; that the inspectors merely looked under the elevator; that he often cleaned this appliance, and noticed that there was too much play for the teeth of the "dogs" to take hold; that the play was about an inch and a half, and that the teeth designed to catch and hold the elevator in case it should drop would not reach far enough to accomplish the purpose; that he noticed that a year before the accident and told some other employee of it, but did not tell the appellee. This evidence was controverted, and the witness Wright, on cross-examination, testified that the play was not more than from one-eighth to a quarter of an inch, and counsel for appellee argue, with considerable force,—if such an argument could be considered on the question of law at issue,—that Anderson's testimony is refuted and overcome by the other evidence in the case. It must be apparent, however, from repeated decisions of this court, that we cannot weigh and determine, from conflicting testimony, what the truth is in passing upon the question of law presented by an instruction directing a verdict. The jury might have believed Anderson, and found that the safety appliance was not in good working order, that it would not catch, that there was too much play and that appellee knew of it, or that it was in that condition for so long a time before the accident that appellee, by the use of ordinary diligence, could have ascertained and removed the defect; that although the elevator and this device were frequently inspected it was never tested to learn whether the "dogs" would prevent the elevator from falling or not, until after the accident, when, as it appears, it was tested, and it was found it would not arrest the fall of the elevator, but would do so after some repairs were made, the nature of which the evidence does not disclose.

Counsel for appellee say that during the trial the court and counsel on both sides examined the elevator and found it as stated by Wright and not as stated by An-

derson, and that the testimony shows there had been no change in the respect mentioned. We have not been referred to anything in the record, and have been unable to find anything, showing such an examination, or its results. It is therefore unnecessary to consider that contention of appellee, or what effect it should have if based upon the record.

The evidence offered on the part of the defendant below tended very strongly to show that the appellee used due diligence in employing competent mechanics to put in the new cables in a proper manner, but it is proved very clearly they did not do their work properly but left the fastenings insecure and unsafe. The evidence tends to prove that this work was done and the materials furnished under a contract with the appellee by these mechanics, who were contractors in an independent business, and not by the servants of the appellee or under its superintendence. In such a case appellee contends that the law is that it is not liable for the mere negligence of the contractors in doing the work; that their negligence, unknown to it, is not to be imputed to it, but that it, having used due care in their selection to do the work and furnish proper materials, can no more be held for their mistakes or carelessness of which it had no knowledge than for hidden and unknown defects in implements or machinery which might be furnished by it after using proper care in their selection, and cites *Devlin* v. *Smith*, 70 N. Y. 70, *Ardesco Oil Co.* v. *Gilson*, 63 Pa. St. 150, Cooley on Torts, 557, and other authorities. It must be observed, however, that this question is not sufficient to dispose of the case, but the issues involved the alleged negligence of appellee in allowing the safety appliance to become and remain out of working order and in such a condition that it would not perform its functions of catching and holding the elevator after the ends of the cables had pulled out of their sockets. It is not disputed that such a device is necessary for the safety of persons ascending

and descending in elevators, and in the case at bar it is, of course, manifest that had this safety device performed its office appellant would not have been injured. It was the falling of the elevator that caused the injury, and it was caused to fall not alone by the pulling out of the cables from their attachments to the elevator frame, but also by the defective condition of the safety device, which prevented it from taking hold of the sides of the elevator shaft and holding the elevator in place. Appellant's declaration is sufficient to sustain a finding based on either defect, or on both combined. It is manifest, therefore, that if he failed to prove a cause of action arising from the defect in the cable fastenings alone, he might still recover if he established the necessary allegations of negligence in his declaration respecting the defective condition of the safety appliance, or of both combined.

Appellee insists that the pulling out of the cable ends from their fastenings was the proximate cause of the injury, and that no recovery can be had for what is supposed to be the remote cause of the accident,—the defective condition of the safety device. But this position is clearly untenable. The two causes operated together, and neither, alone, would have caused the elevator to fall, and if the pulling out of the cables was attributed to an accident or to the negligence of a third person, and still the elevator would not have fallen without the negligence of appellee, appellee would be liable, for both causes, operating proximately at the same time, caused the injury. (16 Am. & Eng. Ency. of Law, 44.) And we have held that "where a party is injured by the concurring negligence of two different parties, each and both are liable, and they may be sued jointly or separately." (*Village of Carterville* v. *Cook*, 129 Ill. 152, and cases there cited.) Appellee is not liable, however, on the facts proved, as a common carrier of passengers, as contended by appellant, but, if at all, only for its failure to use that degree of care which the law required that it, as master,

should exercise in providing a safe means of transit for appellant, as its servant, from one to another of the several floors of its building, to and from which it was necessary for him to pass in the performance of his duties. *McDonough* v. *Lanpher*, 57 N. W. Rep. 152.

The question, then, raised by the instruction to the jury to find for the defendant is, was there any evidence before the jury tending to prove that appellee had failed in this duty, as alleged in the declaration or in some count thereof?   In answering this question the evidence must be considered not only in its application to the defective cable fastenings, but to the defective condition of the safety appliance as well,—and all that the evidence tends to prove, and all just inferences to be drawn from it in appellant's favor, must be conceded to him. *Bartelott* v. *International Bank*, 119 Ill. 259; *Collar* v. *Patterson*, 137 id. 403; *Offutt* v. *World's Columbian Exposition*, 175 id. 472.

Under the rule the evidence most favorable to appellant must be taken as true, this embraces the testimony of Anderson, so strongly combatted by appellee's counsel, and which the court could neither deny nor ignore in passing upon the instruction.   The credibility of the witnesses, the weight of the testimony, the drawing of the inferences of fact from facts proved, were all questions of fact for the jury to pass upon, and not for the court to decide.   Thus, it appeared that the safety device was out of order from the fact (in connection with the testimony of Jallings) that the elevator fell.   It was a question for the jury whether or not the appellee knew this, or whether or not it had been in this defective condition long enough for the appellee, by the use of ordinary care and diligence, to have discovered it, and it was not for the court to say, as a matter of law, that an inspection twice a year by city officers and four times a year by an agent of the indemnity company was sufficient to discharge appellee from all responsibility for its defective

condition. These were evidentiary facts, which should have been submitted, with all other evidence bearing upon the questions at issue, to the jury. It might be that appellee was satisfied if the indemnity company was satisfied; but this would not change its relation to its employees, nor its duty to provide them with ordinarily safe places, appliances and means in, by and with which to perform the tasks which had been allotted to them in their employment. This duty was commensurate with the dangers incident to the service, and if it required a high degree of care, by making frequent examinations and applying frequent tests, to keep the "dogs," or safety device attached to the elevator, in working order and in a safe condition, so as to make the use of the elevator reasonably safe, it was the duty of the appellee to make such examinations and apply such tests. Nor would the assumption by appellant of such dangers as were incident to his service relieve appellee from its duties in the respects mentioned. He did not have charge of the elevator, nor, as appears from the evidence in the record, was it any part of his duty to give it any care or attention. Nor does it appear that he had any knowledge of the dangers attending its use or of the appliance attached to keep it from falling. At all events, whatever might have been the verdict of the jury had the case been submitted, we are satisfied the court erred in directing a verdict and that the Appellate Court erred in affirming the judgment.

The judgments of the Appellate and superior courts are both reversed, and the case is remanded to the superior court for further proceedings not inconsistent with the views we have expressed.

*Reversed and remanded.*