(No. 5468. Decided July 21, 1905.)

# BERNARD HART, *Respondent,* v. CASCADE TIMBER COMPANY, *Appellant.*[1]

TRIAL—BY JURY—FAILING TO DEMAND WHEN SET FOR TRIAL—DISCRETION. It is discretionary to award a jury trial although the same was not demanded when the case was set for trial in the manner required by Laws 1903, p. 50, and error cannot be predicated thereon.

APPEAL — REVIEW — EVIDENCE — CONCLUSION — HARMLESS ERROR. The admission of evidence objected to on the ground that it is a mere conclusion of the witness is harmless where the witness had previously given substantially the same testimony without objection.

SAME—EVIDENCE STRICKEN OUT. Error cannot be predicated upon an incompetent voluntary statement of the party, when being examined as a witness, which was immediately stricken out on motion of the appellant.

MASTER AND SERVANT — NEGLIGENCE — EVIDENCE — SUFFICIENCY — QUESTIONS FOR JURY. In an action for personal injuries sustained by a logger caught between a log and a car, by reason of slack in a cable upon the drum of a logging engine, the minds of reasonable men may differ, and the evidence makes a case for the jury, on the questions of negligence, contributory negligence, assumed risk, and negligence of a fellow servant, where witnesses testified that the drum was constructed to be used with a brake to take up the slack in the cable, that the appliances used in place of a brake upon the drum were unsafe and dangerous, that plaintiff knew nothing whatever concerning them or their operation, that the fellow servant, the engineer, operated the same with due care and took up all slack in the cable before applying the power, and that the plaintiff was injured through the failure of the appliances to take up the slack as would have been done in case the brake or a suitable appliance had been used, notwithstanding evidence that it was not customary to use a brake, the same being dispensed with to lessen the labor of the loading crew.

DAMAGES—EXCESSIVE VERDICT—REDUCTION. A verdict for $5,000 damages for personal injuries sustained by a logger who was caught between a log and a car and both of his thighs broken, is excessive and should be reduced to $3,500, where it appears that he had substantially recovered, and would sustain no permanent injury impairing his earning ability, and that $1,500 would fully compensate him for his loss of wages, and where no claim is made for medical attendance.

[1] Reported in 81 Pac. 738.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered June 17, 1904, upon the verdict of a jury rendered in favor of the plaintiff for $5,000 damages for personal injuries sustained by a logger engaged in loading logs. Affirmed, on condition of the remission of $1,500.

*Reynolds & Griggs*, for appellant.

*A. J. Speckert, James F. O'Brien*, and *Charles O. Bates*, for respondent.

CROW, J.—This action was instituted in the superior court of Pierce county to recover damages for personal injuries. A verdict for $5,000 being rendered in favor of respondent, and final judgment entered thereon, this appeal has been taken.

At the time of the accident complained of, appellant was engaged in the logging business, at a certain camp on the Tacoma Eastern Railroad, using a certain donkey engine to bring in logs from the woods and load the same upon cars. The donkey engine had two certain drums or cylinders, around which lines of cables were wound. The lower one towards the front was known as the main line drum, and the upper or rear one as the loading drum. The lines upon said drums were cables. The main line, being about 1,000 feet in length, was used for the purpose of drawing in logs from the woods to a certain loading platform located near the railway track, about thirty feet from, and in front of, the donkey engine. The shorter line upon the loading drum was used for the purpose of hauling logs from the loading platform onto the cars. This line passed through a block attached to certain timbers on which the engine rested, passed therefrom through a block at the top of a gin pole immediately over a car, and then dropped to the point where the loading was being done.

Respondent, an employee of appellant, was one of the load-

ing gang, being known as the ground loader. The donkey engine had a brake upon the long line drum, and, as originally built, also had a brake upon the loading drum. The latter brake, however, was not used. As it had been placed upon the loading drum to create friction and prevent the loading line from becoming slack, it became necessary, in its absence, to adopt some other contrivance for preventing such slack, in order that the cable of the loading drum might be prevented from falling upon the main line drum. For this purpose, a certain iron roller was first placed upon stanchions standing immediately in front of the main line drum, the line from the loading drum passing over, and the main line under, said roller, which respondent claims was located at a height sufficient to prevent the slack of the loading line from falling upon the main line drum.

About one week prior to the accident, it became necessary to remove the main drum, and make certain repairs, which were made by the engineer and appellant's master mechanic. In order that said main drum might be removed, it became necessary to take out the iron roller above mentioned. Afterwards, instead of replacing the iron roller, the master mechanic suspended wires from two wooden stanchions in front of the engine, each of said wires falling down in the form of a loop, and in said loops placed a stick, and passed the line from the loading drum over, and the line from the main drum under, such stick; the intention being that said device should take the place, and perform the functions, of the iron roller which had been removed. There is evidence tending to show that at the time of this change the engineer, who assisted in the repairs, complained to his superior, the master mechanic, that the new contrivance was unsafe and dangerous. This statement, however, is denied by the master mechanic.

On the day of the accident, respondent was engaged in loading a certain log, and in so doing he fastened the end of the line from the loading drum around the log, and gave a

signal to the engineer to apply power to the loading drum.
This the engineer did, but the log, being irregular in form,
did not pass evenly upon certain skids which were being
used in loading, one end of the log falling below and behind
one of said skids. Thereupon respondent signaled the en-
gineer to turn off the power, which being done, respondent,
taking a peevy or cant hook, stepped in between the log and
the car, for the purpose of pushing or rolling the log back
into a proper position. By reason of the line from the load-
ing drum being attached to the log, it was very taut, and
when the power was released, the loading drum having a
tendency to revolve in an opposite direction, it became slack.

While respondent was in the position just described, the
engineer received a signal to apply power to the main line
drum for the purpose of drawing another log from the woods.
The engineer testified that before doing so he took up all
the slack in the loading line. Thereupon he immediately
applied the power to the main line drum, which began to
revolve and draw the log from the woods. When about 100
feet of the main line had been drawn in, the slack of the
loading line fell upon the main line, was caught, and began
to wind around the main drum. This caused the loading
line to draw the log to which it was attached toward re-
spondent, crushed him against the car, and broke each of
his thigh bones.

Respondent alleged negligence of appellant: (1) In fail-
ing to maintain a brake upon said loading drum; (2) in
failing to maintain a proper and reasonably safe appliance
for keeping the lines apart, and preventing the loading line
from falling upon the main drum. Respondent also con-
tended, that the stanchions and iron roller, originally placed
in front of the main line drum, constituted a proper and
reasonably safe contrivance for keeping said lines apart; that
the stick suspended from the wires, which was afterwards
substituted therefor, was an improper and dangerous appli-
ance; and that the absence of the brake from the loading

drum, and the use of such stick of timber suspended from said wires, were the proximate cause of his injuries. Respondent also alleged, that his duty in no way required him to have anything to do with the engine or its appliances, or to have any knowledge thereof; that he was ignorant of the dangers arising from the absence of said brake or the use of said improper appliance; that he was entirely without fault, and that said injuries were the direct result of the negligence of appellant in failing to provide reasonably safe appliances or machinery for the use of its servants. Appellant has assigned numerous errors which we will consider in their order.

(1)  It is first contended that the trial court erred in calling a jury to try the cause, appellant claiming respondent had waived a jury trial, and that no jury fee had been deposited, prior to the calling of the case for trial. There is no merit in this contention. *Knapp v. Order of Pendo,* 36 Wash. 601, 79 Pac. 209.

(2)  The engineer, being a witness for respondent, was asked, "Would the accident have happened if the roller had been there instead of the pole?" and answered, "No, sir." The motion of appellant to strike the answer as a mere conclusion was denied, and upon this ruling error is assigned.

In *Sears v. Seattle Consol. St. R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081, this court said:

"It is a general rule of evidence that witnesses may not give opinions as to matters of fact which the court or jury are ultimately to determine. But this rule is not without exception. And the exception is not confined to the evidence of experts who may give opinions on questions requiring special skill, knowledge or learning, but includes the evidence of common observers who may state the results of their observations in regard to ordinary appearances and conditions of things which cannot be produced to a jury exactly as they were observed by the witness at the time."

The record shows that the witness, without objection, had previously given substantially the same testimony, saying he

had told the master mechanic the pole would not work as good as the roller, and some one was going to get hurt on it. We therefore do not think prejudicial error was committed in permitting this question and answer to stand.

(3) Respondent, as a witness in his own behalf, after testifying about his position, and as to how the log had been drawn against him, was asked: "Well, what was done to you then, Barney?" and answered:

"Well, I fell across the log, and Johnny, the engineer— I hollered, and the engineer came running, and he says, 'You ain't hurt'; and I says, 'Only two legs broke,' and he says, 'I told him to fix that roller or some one would get hurt on it.'"

Appellant immediately moved the court to strike the answer, and it was stricken. Appellant now contends that this was a voluntary statement of respondent, and that, when the answer was once given, irreparable mischief was done, although it was stricken, and insists that the order striking the answer could not, and did not, cure the prejudicial error.

We do not think the contention of the appellant can be sustained. We find nothing in the general testimony of respondent to show that he was undertaking to make improper or voluntary statements, nor is there anything to indicate that the statement was suggested to him, or in any manner drawn out by his counsel. If this court were to reverse a case every time a witness, in the presence of a jury, innocently volunteers an improper or irrelevant statement, which appellant regarded as prejudicial, very few judgments of a trial court would be sustained. The statement having been withdrawn from the jury, we fail to find that appellant was prejudiced by the incident.

(4) At the close of the respondent's evidence, appellant moved for a nonsuit, which was denied. The principal points relied upon in support of said motion were contributory negligence, assumed risk, negligence of fellow servant, and a

contention that, from the evidence introduced on behalf of respondent, it clearly appeared that appellant, in providing machinery and appliances to be used by his servants, had exercised ordinary and reasonable care and was guilty of no negligence whatever.

Upon the question of contributory negligence, it is a well established principal that such issue will not be withdrawn from the consideration of the jury, when the minds of reasonable men might differ as to whether or not such negligence in fact existed. *Jordan v. Seattle,* 26 Wash. 61, 66 Pac. 114; *Christianson v. Pacific Bridge Co.,* 27 Wash. 582, 68 Pac. 191; *Cook v. Stimson Mill Co.,* 36 Wash. 36, 78 Pac. 39. From an examination of the evidence in this case, we are satisfied that the issue of contributory negligence was properly submitted to the jury. What has been said as to the issue of contributory negligence is true, also, as to that of assumed risk. There was positive evidence to the effect that respondent knew nothing of the construction, management, or use of the engine or its appliances; that he had nothing whatever to do with providing or operating the same; and that he had not been advised as to any dangers attendant upon the use of such engine or appliances. This was the testimony, not only of respondent himself, but also of the engineer. Appellant contends that respondent assisted in the arrangement of this very stick which was substituted for the iron roller and used at the time of the accident. While there was some evidence upon this point, the question of his knowledge, or means of knowing what danger, if any, existed, was one upon which the evidence was sufficiently conflicting to warrant the issue of assumed risk being referred to the jury.

Upon the issue of negligence of a fellow servant, it was contended by appellant that the accident was the result of the negligence of one John Sipe, the engineer, respondent's fellow servant, in failing to take up the slack of the loading line before operating the main line drum, and that such negligence was the sole and proximate cause of the accident.

Substantially all evidence bearing upon this question, and introduced by respondent, tends to show that the engineer did take up the slack of the loading line before applying power to the main line drum; respondent's theory being that, after the main line drum was started, its motion and the rising and falling of the suspended stick, caused the loading drum, in the absence of its brake, to revolve, producing slack in its line, which becoming entangled with the main line caused the accident. Upon the evidence it was certainly a question of fact, to be decided by the jury, whether or not the respondent's fellow servant was guilty of negligence, and this issue was also properly submitted.

The main contention of appellant upon the motion for a nonsuit seems to be that it had fully discharged its duty as master in selecting machinery and appliances to be used by its employees. It contends that the absence of a brake from the loading drum was not negligence, for the reason that the universal custom of those operating donkey engines in logging camps is to operate such drum without a brake; that the brake had been removed for the benefit of the loading crew, whose duty it was to draw out the line from the loading drum; that, as the brake caused friction, the loaders objected to extra work and labor caused thereby, and that the brake was removed for their sole benefit.

It is true, the evidence fails to show that any brake was ever used on the loading drum of this engine. It is also true that the evidence utterly fails to show that, in the operation of donkey engines in logging camps generally, it was customary to use such a brake. Doubtless the brake was removed for the purpose of lightening the labor of the men who drew out the line. The engine, however, as originally constructed, contemplated the use of such a brake, and it might readily be inferred from the evidence that the very fact of the removal of the brake necessitated the iron roller, or some other proper appliance, in front of the engine, to keep the lines apart and prevent accidents. The brake be-

ing removed, it might then become necessary to determine what was a proper and reasonably safe appliance to accomplish this purpose. Upon this point the evidence is conflicting. Witnesses for respondent testified that the pole suspended from the wires was improper, unsafe, and dangerous; while witnesses for appellant testified differently; some saying that the suspended pole was proper; others, that a stationary pole was proper; and another, that no such appliance whatever should be used, but that the engineer should constantly watch the slack and take it up by the use of the friction lever on the loading drum. We think that, under all the evidence as disclosed by the record, an issue arose as to whether the substitution of the pole for the iron roller, by the master mechanic, was or was not the adoption of a dangerous and unsafe appliance, or was the adoption of one that was reasonably safe and proper, and that this issue was one of fact to be decided by the jury. Labatt, Master & Servant, § 43; *Goe v. Northern Pac. R. Co.,* 30 Wash. 654, 71 Pac. 182; *Gaudie v. Northern Pac. R. Co.,* 34 Wash. 34, 74 Pac. 1009; *Swift & Co. v. Holoubek,* 60 Neb. 784, 84 N. W. 249; *McGregor v. Reid,* 178 Ill. 464, 53 N. E. 323, 69 Am. St. 332; *Detroit etc. R. Co. v. Van Steinburg,* 17 Mich. 99; *Ashman v. Flint etc. R. Co.,* 90 Mich. 567, 51 N. W. 645; *Kyle v. Southern Elec. L. & Power Co.,* 174 Pa. St. 570, 34 Atl. 323.

(5) Numerous assignments of error are based upon the giving of certain instructions which were requested by respondent, and also upon the refusal to give other instructions requested by appellant. We will not enter into a specific or analytical discussion of the various instructions given or refused, but will say that we have carefully examined all the instructions given and refused and are convinced, (1) that, if any of the instructions given by the court at the request of respondent are subject to any criticism whatever, the same were amply cured by other instructions given at appellant's request; and (2) that all instructions requested

by appellant and refused by the court were fully covered by other instructions actually given. In fact, the instructions given by the court are complete and, as we think, correctly state the law.

(6)    Appellant contends that the damages awarded, $5,-000, are excessive. From an examination of the entire record, and a most careful and painstaking consideration of the evidence, we are convinced that this contention should be sustained. While respondent suffered a most painful and serious accident, the evidence shows his recovery has been almost a perfect one. It is true, some of the testimony tended to show certain injuries to have still existed at the time of the trial, but it fails to show such injuries to be permanent. On the contrary, the weight of the evidence seems to be that, within a period of perhaps four or five months from the date of the trial, respondent would probably enjoy substantial or complete recovery. It also shows that he will be able to resume work at his occupation of logger; that he has a good pair of legs; that his system is in a healthy and well nourished condition; that the permanent injuries he has sustained, if any, are not of such a character as to impair the usefulness of his legs or prevent him from performing hard labor. The accident occurred on the 17th day of July, 1903, and the trial commenced about eleven months later, on the 14th day of June, 1904. At that time appellant had been walking, and although he carried a cane, he used it only a portion of the time. He was examined by competent surgeons appointed by the court, whose evidence disclosed a very substantial recovery. At the time of the accident, appellant was earning $3 per day. Were we to concede that he had lost, at the time of the trial, and would thereafter lose, a sufficient amount of time to constitute in all eighteen months, his loss in wages could not exceed $1,500. No claim is made for hospital fees or doctor bills, and we cannot assume any such claim existed. If respondent had been allowed $1,500 for loss of time, and $2,000 in addition thereto for

pain and suffering and for any permanent injury which the evidence shows he may have actually sustained, such an award, making a total of $3,500, would certainly be ample compensation.

It is not the province of the court to weigh testimony and determine the amount of damages that shall or shall not be awarded in any given case, but a duty does devolve upon the court to restrain juries from awarding verdicts unnecessarily large, or not warranted by the evidence. The purpose of awarding damages is to give compensation for loss or injury actually sustained, and when a sufficient amount has been awarded to accomplish such purpose, no additional award should be permitted. While we hesitate to interfere with the verdict of a jury estimating damages, we are nevertheless constrained to believe that an award in excess of $3,500 should not, under the evidence, have been made in this action.

It is ordered that if, within thirty days from the filing of the remittitur herein, the respondent shall file with the clerk of the superior court of Pierce county, Washington, his written statement agreeing to accept a judgment for $3,500, the judgment of the superior court be modified by reducing the damages awarded herein from $5,000 to $3,500, the latter sum to bear interest from the date of the trial. Upon the failure of said respondent to accept said sum of $3,500 and interest within said time, it is ordered that a new trial be granted. The appellant will recover costs in this court.

MOUNT, C. J., ROOT, and RUDKIN, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.