## TRICKEY *v.* CLARK.

93 Pac. 457.

TRIAL—WAIVER AND CORRECTION OF ERRORS—REFUSAL OF NONSUIT.

1. Though plaintiff did not prove a case sufficient to go to the jury, a refusal of a nonsuit will not be disturbed, if defendant afterward supplied the omission.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.

2. Whether defendants exercised reasonable care in providing a safe fastening for a lever, by the displacement of which a servant was injured, *held*, under the evidence, to be a question for the jury.

SAME—CONCURRING NEGLIGENCE OF MASTER AND FELLOW SERVANT.

3. A master is liable for injuries to a servant caused by the concurring negligence of the master and a fellow servant, which would not have happened, but for the master's negligence.

SAME—INJURY TO SERVANT—PROXIMATE CAUSE—QUESTION FOR JURY.

4. Whether the knocking loose of a carriage fastener by a fellow employee falling against it, resulting in plaintiff's son being injured was a natural consequence to be anticipated from defendant's failure to provide a safe and suitable fastener, *held*, under the evidence, a question for the jury.

TRIAL—INSTRUCTIONS—FAILURE TO REQUEST.

5. Where a party did not request a direct instruction upon a point, he should not complain of the court's failure to instruct thereon.

EVIDENCE—ADMISSIONS BY AGENT—COMPETENCY.

6. In an action to recover for injuries to plaintiff's son, resulting from the lever of a log carriage becoming unfastened, statements by defendant's agent while reconstructing the mill, that the lever fastening was defective, was properly received, as notice of such defect to the agent was notice to defendant.

SAME—OPINION EVIDENCE—EXPERT TESTIMONY—WHEN PROPER.

7. In an action for injuries resulting from a lever being defectively fastened, the opinion of expert millmen as to the safety and propriety of the fastening was not necessary or competent, where the construction of the device was fully explained to the jury, and no particular skill was required to determine its safety.

SAME—MATTERS OF COMMON KNOWLEDGE.

8. In an action for injuries resulting from a lever being defectively fastened, testimony that the pin in the fastener was so loose that the jar of the mill worked it out, and that the fall of the fastener tended to knock it out, given in explaining the models of the lever and fastener to the jury, was not expert testimony.

APPEAL—RECORD—QUESTIONS PRESENTED—ARGUMENT OF COUNSEL.

9. Where an objection to an argument was overruled, on the ground that it was fairly an answer to the contention of the defendant's, the argument of defendant's counsel, not being in the record, such ruling cannot be reviewed

From Multnomah: ALFRED F. SEARS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action to recover damages for personal injury suffered by plaintiff's son, a lad about 17 years of age, while working for defendants. At the time of the injury, and for some time prior thereto, defendants were operating a steam sawmill at Linnton, a few miles below Portland, which they had purchased a few months previously. The mill was equipped with an upright iron feed lever fastened to the floor about $2\frac{1}{2}$ feet from the saw pit, and which was connected with the engine and operated by the sawyer in moving the log carriage forward and backward while cutting lumber. When the lever was in an upright position the log carriage was at rest; but as there was danger of it being accidentally moved, and the carriage set in motion, it was provided with a cast-iron drop fork lock or fastener attached to the frame a few inches from the floor on the side next to the saw pit, and an iron pin passing through the lever and frame just below the lock for the purpose of securely holding the lever in position when the carriage was at rest. As the appliance came from the manufacturer, the lock or fastener projected about an inch from the lever frame, and could be conveniently raised and lowered into place with the hand only. Some time prior to defendants' purchase of the mill, however, a concave steel plate projecting about $2\frac{1}{4}$ inches had been riveted to the face of the lock to enable the sawyer to manipulate it with his foot; but for some reason the use of the lock, as thus equipped, had been abandoned by the former owner of the mill. Two or three months before the accident complained of, and while defendants were overhauling and repairing the mill, their millwright and superintendent contemplated reinstalling the lock; but objection was made to his doing so by some employees because it was unsafe, and had previously permitted an automatic movement of the carriage. The attention of one of

the defendants was called to the matter, and he suggested that a hole be made through the frame and lever just below the lock, and an iron pin be provided to supplement the lock, which was done accordingly. As thus equipped the lever was used by defendants up to the time of the accident.

It was necessary in the operation of the mill to remove the band saws from the wheels upon which they operated four times a day and take them to the filing room to be filed. Plaintiff was employed by defendants as saw filer, with his son as an assistant, and they were accustomed to aid in the work of removing the saws and taking them to the filing room. It required five or six men to do this, and they had to work in the space between the saw pit and the lever, and roll or move the saws over and across the carriage track to get them to the filing room. On the day of the accident, and while a saw was being removed and taken to the filing room, the teeth caught in the clothes of one of the workmen, and he was thrown against the lever, knocking out the pin, loosening the lock, and starting the log carriage, which caught and severely injured plaintiff's son.

This action is brought to recover damages for the injuries so sustained. The negligence charged in the complaint is that defendants "carelessly and negligently failed to maintain a proper or safe fastening for said lever, so as to prevent it from jarring loose, or from being accidentally moved by workmen employed in and about the mill, and that the unsafe condition of said lever in being insufficiently fastened and secured was known to the defendant during all of said time." The defendants deny the negligence charged in the complaint, and affirmatively allege (1) that they had equipped their mill with reasonably safe machinery, tools and implements, such as ordinarily used in similar mills. and that it was provided with ordinarily safe machinery and appliances in good repair and condition at the time of injury to plaintiff's ward; (2) that while the saw was being removed to the filing room by plaintiff and his fellow servants one of such servants accidentally fell against the lever and released the fastening thereof, so that the log carriage was propelled forward, injuring plaintiff's son, which accident was un-

avoidable by defendants; (3) that whatever negligence, if any, caused the injury was that of a fellow servant and not the defendants; (4) that plaintiff's son fully understood the manner in which the lever was fastened, and the dangers incident thereto, and with such knowledge voluntarily entered upon and continued in defendants' service, and thus assumed all the risks and hazards reasonably to be apprehended in the performance of his duties. The reply put in issue the averments of the answer. Trial resulted in verdict and judgment in favor of plaintiff, and defendants appeal, assigning error in overruling their motion for nonsuit, in the admission and rejection of evidence, and in giving and refusing certain instructions.

AFFIRMED.

.For appellants there was a brief with oral arguments by *Mr. J. F. Boothe* and *Mr. Rufus Mallory.*

For respondent there was a brief with oral arguments by *Mr. E. E. Coovert* and *Mr. G. W. Stapleton.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The record contains all the evidence given on the trial. In determining the questions arising on the motion for nonsuit we are therefore to consider the entire evidence. If plaintiff had not proved a cause sufficient to be submitted to the jury when he rested, the ruling on a motion for a nonsuit will not be disturbed, if defendants afterward supplied the omission: *Bennett* v. *N. P. Ex. Co.* 12 Or. 49 (6 Pac. 160).

2. Upon the entire record we think it cannot be said, as a matter of law, that there was no competent evidence tending to show that defendants did not exercise reasonable care in providing a suitable lock or fastener for the log carriage lever, under the circumstances attending its situation and location. The lock had been changed as it came from the manufacturer by the addition of a steel plate about $2\frac{1}{4}$ inches square, which necessarily made it more likely to drop from its own weight or the accumulation of sawdust thereon, or be displaced by defendants' employees working near it. Defendant Wilson testi-

fied that he was informed of its alleged unsafe conditions and the danger to be apprehended therefrom, and that he advised the use of a pin as an additional fastener.

3. The evidence tends to show, however, that the pin as actually made was so short and loose in the hole, that a dropping of the plate or an accidental contact therewith by an employee would have a tendency to drive the pin out, throw the lever and start the carriage. Witness McKereghan testified that he could knock the lock down and drive the pin out so as to throw the lever by one motion of his foot. Moreover, the fastener was located at a place ·where the employees were compelled to work in the discharge of their duties. There were only 2½ feet between the lever and the saw pit. In this space five or six men were required to work in removing the saw. The saw itself was 12 inches wide, so there was necessarily danger of the workmen coming in contact with the lever, displacing the lock and starting the carriage, unless the lever was safely fastened. On this evidence the court would not be justified in taking the case from the jury, and declaring as a matter of law that defendants exercised reasonable care in providing a safe fastening for the lever. Nor do we understand counsel for defendants to make any serious contention on this point. Their position is that the negligence of defendants was not the proximate cause of the injury, but it was caused by an employee accidentally or negligently coming in contact with the lever and disengaging the lock, an event for which they were not responsible. The doctrine of proximate cause in negligence cases is often difficult, and much learning has been displayed in its discussion. While there is an apparent if not real conflict in the authorities, or rather in the application of the rule to the facts of particular cases, we take the law, in any event, to be settled that a master is liable for an injury to his servant, caused by the concurring negligence of himself and fellow servant, which would not have happened had the master performed his duty: 12 Am. & Eng. Enc. Law (2 ed.), 905; *Sherman* v. *Menominee River Lumber Co.* 72 Wis. 122 (39 N. W. 365: 1 L. R. A. 173);

*Goe* v. *N. P. Ry. Co.* 30 Wash. 654 (71 Pac. 182) ; *Gila Valley, G. & N. Ry. Co.* v. *Lyon,* 9 Ariz. 218 (80 Pac. 337) ; *Siegel, Cooper & Co.* v. *Trcka,* 218 Ill. 559 (75 N. E. 1053: 2 L. R. A., N. S., 147: 109 Am. St. Rep. 302) ; *McGregor* v. *Reid, Murdock Co.* 178 Ill. 464 (53 N. E. 323: 69 Am. St. Rep. 332) ; *Hansell-Elcock Foundry Co.* v. *Clark,* 214 Ill. 399 (73 N. E. 787) ; *Armour* v. *Golkouska,* 202 Ill. 144 (66 N. E. 1037) ; *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242 (32 N. E. 285: 18 L. R. A. 215).

In *Sherman* v. *Menominee River Lumber Co.* 72 Wis. 122 (39 N. W. 365: 1 L. R. A. 173), plaintiff was injured by an edger in defendant's sawmill, which, by reason of a defect, was unnecessarily dangerous. He was working with the edger, and was injured by a plank which was thrown backward from the machinery, due to the negligence of another operator. The trial court held that plaintiff could not recover because the negligence which caused his injury was due to a co-employee. But on appeal the cause was reversed. The court said:

"We are of the opinion that the negligence of the co-employee of the plaintiff, under such circumstances, would not excuse the defendant, but would simply be negligence contributing to the injury caused by the negligence of the defendant and the co-employee, and the defendant would be liable to the plaintiff. The culpability of defendant lies in the fact that it permitted the use of a machine in doing its work, which, by reason of its defects, was unnecessarily dangerous to its employees; and it cannot excuse itself by alleging that if it had been carefully used no accident would have happened to the plaintiff."

In *Siegel, Cooper & Co.* v. *Trcka,* 218 Ill. 559 (75 N. E. 1053: 2 L. R. A., N. S., 147: 109 Am. St. Rep. 302), two servants of defendant were riding in an elevator. One threw the other down, so as to cause his foot to project over the floor of the elevator, and it was crushed in passing a new defectively constructed entrance. It was contended that defendant was not liable for the injury thus received, because the proximate cause was the negligent act of the servant who threw the plaintiff upon the floor of the elevator. But the court ruled that, if the defendant "was guilty of the negligence charged in the declara-

tion, and without which the injury in question would not have occurred, then it would make no difference as to its liability that some act or agency of some other person or thing, also contributed to bring about the result from which damages are claimed. Both or either of the contributing agencies were liable for the injury occasioned by their negligence, appellee being without fault, and not held to have assumed the risk involved in the improper construction."

In *McGregor* v. *Reid, Murdock & Co.* 178 Ill. 464 (53 N. E. 323: 69 Am. St. Rep. 332), defendant had employed competent mechanics to put in a new cable for its elevator. The contractors left the fastenings insecure and unsafe, by reason of which the cable parted, and on account of a defective safety device the elevator fell, injuring plaintiff. The defendant insisted that the imperfect fastening of the cable was the proximate cause of the injury, and that no recovery could be had against it, on account of the defective condition of the safety device. The court said:

"This position is clearly untenable. The two causes operated together, and neither alone would have caused the elevator to fall, and if the pulling out of the cables was attributed to an accident or to the negligence of a third person, and still the elevator would not have fallen without the negligence of appellee, appellee would be liable; for both causes, operating proximately at the same time, caused the injury."

In *Gila Valley, G. & N. Ry. Co.* v. *Lyon,* 9 Ariz. 218 (80 Pac. 337), plaintiff's intestate was killed by reason of the concurring negligence of defendant company in constructing and maintaining a spur track, and that of the conductor of the train upon which he was riding at the time of the accident. In discussing the question, the court said:

"In the case at bar it was the duty of the railroad company to have exercised reasonable care and caution to construct and maintain its spur at the place where the accident occurred, so as to guard against such accidents as might reasonably have been foreseen as liable to happen. If it failed in its duty in this respect, it was guilty of negligence, and if this negligence contributed to the accident in the sense that otherwise it would

not have occurred, then its negligence, coupled with the negligence of the conductor, in operating the train, became the proximate cause. On the other hand, if the conductor was guilty of negligence in operating the train, and this negligence, coupled with the negligence of the railroad company in the matter of the construction and maintenance of its spur, was the cause of the injury, such negligence on the part of the conductor was a concurring or co-operative cause, but not the sole cause. If the negligence of the conductor was such as would have resulted in the accident, even had the railroad company exercised due care and diligence, then the negligence of the conductor would have been not only the 'proximate,' but the 'sole,' cause of the injury, and the railroad company would not be liable. The issue raised by the pleadings and submitted was whether the accident was caused in whole or in part by the negligence of the company. The question whether the company was liable would be answered in the negative, were the jury to say that the conductor's negligence was the sole cause of the accident, for, if the sole cause, then no negligence on the part of the company could have contributed to it. The court did therefore properly charge the jury that in determining the question whether the company was liable for the injury they were to find whether negligence on the part of the company contributed to the accident, or whether it was brought about solely by the negligence of the conductor."

In *Goe* v. *N. P. Ry. Co.* 30 Wash. 654 (71 Pac. 182), a servant employed about machinery slipped, and in falling struck an unguarded lever, which set the machinery in motion. In endeavoring to catch himself he threw his hand against a cog wheel, which caught and ground it. It was insisted by the defendant that the injury to plaintiff was caused by an accident, for which it was in no way responsible, and it was argued that, if it had not been for the accident of falling, supplemented by the accident of striking the lever, still further supplemented by plaintiff throwing his hand in the cog, no injury would have been sustained. The court said:

"This may be conceded without settling the question of proximate cause, for it is well established that, where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the acci-

dent would not have resulted in the injury excepting for the negligent act, the negligence is the proximate cause of the injury for which damages may be recovered."

We conclude from these authorities that, if defendants were negligent in not providing a suitable and safe lock or fastener for the feed lever, and without such negligence the accident to plaintiff's son would not have happened, they are liable, notwithstanding the act or negligence of a co-employee may have been a concurrent or co-operating cause of the injury. It is true a master is responsible only for the result of his own negligence. To render him liable for an injury to his servant, there must be a direct causal connection between his misconduct and the injury, and the latter must be the direct result of some negligent act of the master. But he is chargeable with the natural and probable consequence of his own act, and the causal connection will be sufficient, if, according to the usual experience of mankind, the result ought to have been foreseen and provided against by him. The intervening act of a third person or other agency contributing to, and bringing about, a condition necessary to produce the injurious effect of the original negligence, will not excuse the first wrongdoer, if the intervening cause and its probable consequence be such as should have been anticipated by the latter: *Ahern* v. *Oregon Telephone Co.* 24 Or. 276 (33 Pac. 403, 35 Pac. 549: 22 L. R. A. 635). "The test," says the Supreme Court of Massachusetts, "is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise": *Stone* v. *Boston & Albany R. R.* 171 Mass. 536 (51 N. E. 1: 41 L. R. A. 794).

4. It is claimed that the accidental or negligent tripping of the lock by one of the workmen falling against the lever was a thing not likely to happen in the ordinary course of events, and it was therefore not the duty of defendants to have anticipated or provided against it. But this was a question for the jury to determine, as a matter of fact, from all the circumstances of the case. The proximate cause of an injury is generally a question for the jury. It is only when the facts and inferences

to be drawn from them are undisputed that it becomes a question for the court: *Ahern* v. *Oregon Telephone Co.* 24 Or. 276 (33 Pac. 403, 35 Pac. 549: 22 L. R. A. 635). There was certainly a sufficient dispute in this case as to whether according to the usual experience of mankind the lever by which the log carriage was operated was likely to be moved and the carriage accidentally started by an employee of defendant coming in contact with it, unless it was securely fastened, to render it a question of fact for the jury whether the defendants should have anticipated and guarded against such an event.

5. Counsel complain that this question was not directly submitted to the jury. But the record does not disclose that a request to do so was made by defendants, nor that an exception was saved to the court's failure in this regard, if there was any such failure. The defendants requested an instruction that, even if they were negligent as charged, they would not be liable if the injury would not have happened but for some intervening cause not produced by them, and which ordinary care on their part could not have prevented. This is not the law as we understand it. If defendants were negligent, an intervening cause or agency would not excuse them from the natural and probable result of their negligence if it was their duty to have anticipated and provided against such event, because such intervention would be a thing likely to happen in the ordinary course of events: *Lane* v. *Atlantic Works,* 111 Mass. 136.

6. Plaintiff testified that at the time the mill was being reconstructed he overheard a conversation between some of the employees and Mr. Mitchell, who was in charge of the reconstruction for defendants, in reference to a defect in the lever and the manner in which it was fastened, and was permitted, over the objection and exception of defendants, to relate such conversation. This evidence was, in our opinion competent. Mitchell was the representative of defendants in charge of the reconstruction of the mill, and notice to him of a defect in the lever or fastener was notice to them. We do not think the jury could have been misled by supposing from this testimony that a previous runaway of the carriage had occurred, while a lever

was in use with the same fastening as it had at the time of the injury to plaintiff's son, since the record shows that the court on motion of defendants withdrew from their consideration all testimony concerning the former runaway. It clearly appears that the conversation testified to by the witness, so far as the jury were permitted to consider, had reference to the lever used in the mill prior to defendants' purchase, and the advisability of reinstalling such lever with its then fastener.

7. The defendants called as witnesses several expert millmen, and sought to show by them that, in their opinion, the lever in use at the time of the injury complained of was provided with a reasonably safe and proper lock or fastener. The plaintiff had previously asked such a question of one of his witnesses, but on the objection of defendants, the witness was not permitted to answer. Having thus been instrumental in establishing the law of the case, it would seem that defendants could not reasonably complain because the court adhered to it throughout the trial. But, however that may be, the evidence was incompetent. It was directed to the principal issue in the case, and one which the jury were required to determine from the facts, and not from the opinions of witnesses. Models of the lever and fastener were before the jury. Its construction and operation were fully explained to them, and it required no particular skill or science to determine whether the fastener was reasonably safe. The opinion of experts was neither necessary nor competent: Labett, Master & Servant, § 830; *Harley* v. *Buffalo Car Mfg. Co.* 142 N. Y. 31 (36 N. E. 813) ; *Pulsifer* v. *Berry*, 87 Me. 405 (32 Atl. 986).

8. The testimony of the witness Trickey, that the pin used in the fastener at the time of the accident was so loose that the jar of the mill, when in operation, would work it out, and that of Bradford, that the fall of the clip would have a tendency to knock the pin out, was not of this character. It was given with reference to the models of the lever and fastener used on the trial and in explanation of the construction of such fastener, and its operation.

9. It appeared incidentally from the evidence that a fastener for the lever used by the previous owner of the mill had been removed by defendants, and the one in use at the time of the accident substituted in place thereof. In referring to the former fastener, one of the witnesses denominated it as a "farmer's rig." Counsel for plaintiff in his closing argument, in alluding to the old fastener, so designated it, but did not undertake to describe it, but called the jury's attention to the fact that it had been adopted after a previous runaway of the carriage, and that it had been removed and another substituted in its place by defendants. Counsel for defendants objected to these remarks on the ground that they were a discussion of a matter not in evidence. The court overruled the objection, for the reason that the argument "was fairly an answer to the contention of the defendants," and as the argument of defendants' counsel is not in the record, we cannot say the ruling was error.

The judgment of the court below will be affirmed.

AFFIRMED.

Decided 28 January, 1908.