Elizabeth M. Royer, as Administrator of the Estate of Glen R. Royer, Deceased, Plaintiff-Counter Defendant-Appellee, v. Robert L. Graham, as Administrator of the Estate of James A. Graham, Deceased, Defendant-Counter Plaintiff-Appellant.

Gen. No. 10,479.

Third District.

January 2, 1964.

Greanias & Owen, of Decatur, for appellant.

Fribley and LaCharite, of Pana, for appellee.

ROETH, JUSTICE.

This action is brought by the plaintiff under the Wrongful Death Statute for the death of Glen R. Royer, allegedly caused by Robert Graham. On October 14, 1961, two automobiles, one operated by Royer and one by Graham, collided killing both drivers. The administrator of the Graham estate filed a counterclaim and after trial by jury a verdict was returned in favor of the plaintiff on the complaint and against defendant on the counterclaim and judgment entered thereon. For purposes of clarity hereafter the decedent Royer will be referred to as plaintiff and the decedent Graham as defendant. Defendant appeals from the judgment entered in favor of plaintiff on the complaint but no appeal is taken from the judgment against the defendant on the counterclaim.

Counsel contends that the verdict is contrary to the law and evidence, that there is no competent evidence to sustain the jury's verdict as to negligence of the defendant or due care of the plaintiff and that the trial court erred in excluding certain evidence and refusing one of defendant's instructions. Defendant also contends that the judgment is against the manifest weight of the evidence.

The complaint charged defendant with negligently driving his automobile on the wrong side of the highway contrary to paragraph 152 of Chapter 95½, Illi-

23

nois Revised Statutes. The issue of negligence and due care therefore had to be determined by a finding of where the collision occurred, in the lane of traffic plaintiff was traveling or in the lane of traffic defendant was traveling.

Defendant's first contention is that where circumstantial evidence is relied upon to prove ultimate facts in issue, such facts are not proven unless such circumstantial evidence reasonably tends to prove such facts to the exclusion of any other reasonable hypothesis.

The law applicable in considering a motion for directed verdict and for judgment notwithstanding the verdict, such as were filed in this case and overruled by the lower court, has been stated over and over again by the courts. In Coulson v. Discerns, 329 Ill App 28, 66 NE2d 728, the court said:

> "On a motion for directed verdict for defendant, the evidence is considered in its aspect most favorable to the plaintiff, with all the inferences reasonably deducible, to determine whether there is a total failure to prove an element essential to the maintenance of the cause of action alleged. When so considered, if there is no evidence which tends to prove an essential element of plaintiff's cause of action, a motion to direct a verdict in favor of defendant should be granted. . . . No inference of negligence arises from the happening of an automobile accident. . . . The existence of a certain fact cannot be reasonably inferred from the evidence when the existence of another fact inconsistent with the first can be inferred from the same evidence with equal certainty."

In McGregor v. Reid, Murdoch & Co., 178 Ill 464, 53 NE 323, the court in stating the above rule and the court's duty in applying it said:

24

". . . all just inferences to be drawn from it in appellant's favor, must be conceded to him. . . ."

"The credibility of the witnesses, the weight of the testimony, the drawing of the inferences of fact from facts proved, were all questions of fact for the jury to pass upon, and not for the court to decide."

In Devine v. Delano, 272 Ill 166, 111 NE 742, the Supreme Court stated:

"If there is in the record any evidence from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that all the material averments of the declaration have been proven, a verdict should not be directed. . . . There was no witness to the accident, and hence the question whether deceased was knocked off by the post depends upon the inferences to be drawn from the testimony. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. . . . A greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts. . . ."

In Hurst v. Madison Coal Corporation, 201 Ill App 205, it was said:

"It (negligence) may be proven by circumstantial evidence. If such evidence is sufficient in the eyes of the law to fairly warrant a finding that it exists a verdict based on it will not be set aside on appeal because it is not supported by positive proof. It is for the jury to determine that fact from the evidence. Negligence or proximate cause

are not questions of law, unless the evidence leaves no opportunity for two fair minds to differ on what the facts are. . . ."

The evidence that must be considered in arriving at our decision is as follows. The collision occurred on Route 48 approximately one mile south of the Village of Blue Mound. Plaintiff was traveling in a southwesterly direction and defendant in a northeasterly direction. The road is blacktopped with a broken white center line and a solid white line running along each edge. It is a straight road from the edge of Blue Mound to the point of the impact, a distance of approximately one mile, and for a substantial distance south of the point of the impact. From the exhibits it appears to run straight for at least a mile and certainly for as far as the eye can see on the photograph. The collision occurred around 1:30 a. m. on a clear evening in an unlighted rural area. The only semblance of a witness to the collision was a truckdriver who testified that he first observed plaintiff's automobile traveling in a southwesterly direction down the highway as he, the witness, was leaving the Village of Blue Mound. Plaintiff's automobile was about 2½ to 3 blocks ahead of him and the two vehicles traveled at about 45 miles per hour, the two vehicles staying about the same distance apart up to the point of impact. That as he followed plaintiff prior to the collision, plaintiff's automobile appeared to stay on the same side of the road as the truck and traveled in a straight direction. He saw the oncoming car, then an explosion. He flipped on his bright lights and saw defendant's car and a cloud of dust. At the time defendant's car looked like it was coming right at him and then veered into the cornfield. During all this time the witness stated he was in the west side or southbound lane of the highway.

26

After the collision the two cars were about 200 feet apart with plaintiff's automobile on the right or west side of the road with its rear end just a few feet off the pavement facing in a northwesterly direction and defendant's car was on the left or east side of the road, the front end in a cornfield facing north. The left front corner of each vehicle was completely demolished. On cross-examination counsel for the defendant exacted from the aforesaid witness an admission that he could not see the road surface when he observed plaintiff's car prior to the collision and was only assuming that it was in its proper lane and assuming when he stated that defendant's car appeared to be in the southbound lane after the collision.

The aforesaid witness testified he noted considerable debris made up of glass, dirt, rocks, material and road oil on the road and specifically referred to an area directly behind plaintiff's disabled automobile. There, a considerable amount of debris had been deposited. He identified the area in a photograph, one of plaintiff's exhibits. Other witnesses appearing at various times after the collision also testified as to the presence of this debris in the area immediately behind plaintiff's automobile. The witnesses all testified to a number of scuffs and scratches in the blacktop surface of the highway. The marks ran from plaintiff's automobile to the defendant's automobile. The testimony established, as well as the photographs, a streak or stain caused by either oil or antifreeze. The stain started at a point either right on the center line or just a little to the west of the center line, then proceeded in a northeasterly direction to the east shoulder of the road running off the road onto the shoulder behind the spot where defendant's automobile came to rest. While the testimony showed that there was debris scattered from the spot where plaintiff's car came to rest in a diagonal line across the highway to the point

27

where defendant's car came to rest, most of the debris was situated in a southbound or west half of the highway and south of that point in the center of the highway where the liquid stain first appeared. One witness testified as to the large deposit of oil, dirt, rocks and glass on the pavement directly behind plaintiff's automobile and that a lighter amount of this debris was scattered in a northeasterly direction toward the center line a distance of 44 feet to a point where the liquid stain appeared in the center of the road. From the evidence it is apparent that as you view the road from north to south you see first the defendant's car on the left shoulder. Directly behind this is a scuffed mark on the grassy shoulder where it would appear the car left the road. Proceeding south the liquid stain trails from this point of the shoulder to the center of the road, perhaps as much as 100 feet. Light scuffs of immeasurable depth appear on the road surface and some debris is scattered in this path. The liquid stain terminates on the center line. Proceeding from this point south the road was littered with debris for a distance of about 44 feet to a very large deposit of debris. Scuff marks follow this trail increasing in depth and being measurable near the deposit of debris. The measurable scuff marks were deep at the south end of each mark and shallower as they moved to the north. The scratches and scuffs in the road south of the liquid stain were all in the west half or southbound lane of the road. The deeper scuff marks were estimated to be approximately ½ inch in depth. One witness testified there was no debris on the east side of the highway south of the liquid stain and that the deepest scuffs in the pavement were just north of the area where most of the debris was deposited on the west half of the highway.

█ Counsel for both sides argue and theorize as to what occurred on the night in question. Which theory

28

is to be followed points up the important question of whether or not a jury could, without acting unreasonably in the eye of the law, find that defendant drove his automobile into the southbound lane of traffic. As counsel for defendant states, the case is based on circumstantial evidence, laying aside for the moment the testimony of the one witness who observed the "explosion" or collision. It is apparent from the argument of counsel and from the facts that we are dealing with degrees of testimony. What a court in one instance may feel is sufficient to permit a judgment to stand may differ from the findings of the same court under a different set of circumstances or a different court under the same set of facts. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts and which usually and reasonably follow according to the common experience of mankind. Devine v. Delano, supra. What could a jury reasonably infer from this testimony? First, they could reasonably infer that the liquid stain leaving a trail from the center of the road to the rear of defendant's automobile was caused by the defendant's car. Secondly, that the collision occurred at a point south of this liquid stain. They could next infer that the impact took place approximately at the point where the large deposit of debris was found and that the scuff marks leading from that area to the point where defendant's car left the road, lessening in depth as the marks moved to the north, were caused by defendant's automobile. That from the evidence that no debris was found in the east half of the road south of the oil stain would certainly assist the jury in inferring that the collision occurred in the west half of the road. Added to this is the testimony of the witness who saw the "explosion" and who testified that plaintiff's automobile immediately prior to the

29

collision was driving at the rate of 45 miles per hour on a straight road and in a straight direction and that defendant's automobile after the collision appeared to be in the west half of the road before it left the highway and ran off on the east shoulder. From this testimony we cannot say that it can be inferred with equal certainty that the collision occurred on the east half of the highway.

■■ The same, as stated regarding proof of negligence, can be said with regard to the exercise of due care on the part of plaintiff, for evidence is totally lacking that plaintiff crossed into the northbound or east lane. The exercise of due care need not be established by direct and positive testimony but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the collision. Ruspantini v. Steffek, 414 Ill 70, 110 NE2d 198.

Defendant cites several cases, including Tiffin v. Great Atlantic and Pacific Tea Co., 18 Ill2d 48, 162 NE2d 406. The question involved there regarded infected food and proof was totally lacking from which an inference would arise that the food was contaminated when sold by defendant. Defendant also cites Celner v. Prather, 301 Ill App 224, 22 NE2d 397. This was a suit charging wilful and wanton misconduct and the court stated:

> "Whether this was the result of the deceased's wilful and wanton misconduct, or whether it might have resulted from mechanical causes connected with the car, or was the result of deceased's negligence, cannot be determined from the evidence."

We think the last statement of the court is the most significant. There was no proof in that case as to what occurred at the time of the collision, there being no eyewitnesses. In Thomas v. Smith, 11 Ill App2d 310, 137 NE2d 117, this court stated:

"It is not the province of this court to disturb the verdicts of juries on questions of fact, unless clearly and palpably erroneous."

There we were also dealing with a situation involving the same questions of law presented here. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, the court said:

"While it is the rule that where circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed."

It is the opinion of the court that the lower court properly ruled in denying defendant's motion for judgment notwithstanding the verdict, directed verdict and for a new trial.

■ Defendant also contends that the lower court erred in refusing to give defendant's instruction No. 10 taken from IPI, Sec 12.01. This instruction deals with intoxication. The evidence contained in the record regarding intoxication was exacted from one witness who testified that he had an opinion as to whether or not plaintiff had been "drinking" and he answered that he had such an opinion and that his opinion was that plaintiff "had been drinking." On cross examination the same witness stated that he spent 1½ to 2 hours drinking coffee with the plaintiff during which time three pots of coffee were consumed and that when the witness left the company of the plaintiff at about 12:30 a. m., approximately one hour before the accident, the witness' opinion was that plaintiff was sober. From the record it is clear that there was no evidence before the jury to establish that plaintiff was intoxicated at or immediately prior to the time of the collision. Cases cited by the defendant are of no assistance. In Keokuk & Hamilton Bridge Co. v. Wetzel, 228 Ill 253, 81 NE 864, the court said:

"Where there is any evidence in the record which, with the fair inferences which may be drawn therefrom, tends to prove a material issue in the case, it is the duty of the court, when requested so to do, to instruct the jury as to the law applicable to such issue." . . .

No fair inference of intoxication can be drawn from the above testimony even if we were to disregard the testimony exacted from the witness on cross examination.

█ Finally, the defendant contends that the court erred in refusing to permit certain evidence to be presented to the jury. Defendant made an offer of proof outside the presence of the jury. The witness called, testified to hearing plaintiff say that he had been stopped by the State Police who told him "he had a headlight out." This is the extent of the testimony. This allegedly occurred around 10:00 p. m. Defendant infers that plaintiff's silence as to the truth or falsity of the accusation made by the State Police or his failure at the time to explain that he had the alleged defect repaired constituted an admission that one headlight was out and proof that it was out at the time of the collision, citing Dill v. Widman, 413 Ill 448, 109 NE2d 765, and Hatcher v. Quincy Horse Ry. & Carrying Co., 181 Ill App 30. The circumstances involved in this case hardly admit of such conclusion. This was a conversation relating to an incident allegedly occurring 3½ hours prior to the accident. A witness testified that he saw plaintiff leaving just a short time prior to the accident. That to his best knowledge the lights on plaintiff's car were burning. There is no evidence other than that proffered by defendant to establish that plaintiff was driving with a light out. To permit a jury to speculate on so flimsy a piece of testimony would be error. The

32

refusal on the part of the lower court to permit this testimony was not reversible error.

For the reasons stated herein the judgment of the lower court will be affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.